[No. 59934-3.   En Banc.   May 19, 1994.]

RUSSELL J. TRASK, *Individually and as Personal Representative, Respondent,* v. RICHARD L. BUTLER, ET AL, *Petitioners.*

*Lane Powell Spears Lubersky,* by *Thomas W. Top,* for petitioners.

*Christensen, O'Connor, Johnson & Kindness, F. Ross Boundy,* and *Diana V. Blakney,* for respondent.

GUY, J. — Respondent Russell Trask filed a legal malpractice action against Petitioner Richard Butler claiming professional negligence, breach of fiduciary duty, and breach of contract. Butler moved for summary judgment as to all of Russell's claims. The trial court denied Butler's motion. We granted discretionary review of an interlocutory decision to determine whether the trial court erred in denying Butler's motion for summary judgment. The question presented is whether an estate beneficiary is owed a duty of care from an attorney hired by the personal representative of the estate. We answer the question in the negative and reverse the trial court's order denying summary judgment.

## BACKGROUND

Laurel Slaninka and Russell Trask are the children of George and Johanna Trask. After George's death in 1983, Laurel was appointed as personal representative for the estate of George Trask and as attorney-in-fact for Johanna.[1] George's will and a reciprocal durable power of attorney requested that Laurel act in these capacities. In 1984, Laurel retained attorney Richard Butler to assist her with her duties as attorney-in-fact and as personal representative.

Before George died in 1983, he conveyed to Russell by quitclaim deed a 13½ acre parcel of land on Bainbridge Island. The deed gifting the property to Russell was signed by George but not Johanna. In 1985, Laurel attempted to negotiate the return of the 13½ acres from Russell, arguing that the property legally belonged to their mother because

---

[1]Laurel petitioned for appointment as guardian for Johanna in 1985. The petition for guardianship was still pending when Johanna died in 1987.

the quitclaim deed did not contain Johanna's signature. Laurel sought return of the property so that it could be sold to pay for their mother's health care. Russell refused to return the property. Laurel, acting as personal representative for the estate of George Trask and as attorney-in-fact for Johanna, initiated a quiet title action against Russell. The quiet title action related to the 13¹/₂ acres quitclaimed to Russell and a 6-acre parcel that included Johanna's Bainbridge Island waterfront home (the homestead). Laurel brought the quiet title action over the 6-acre parcel to determine whether Russell had lawfully constructed a garage, a greenhouse, and a turnaround driveway some 70 feet onto the homestead property. Russell owns a parcel of waterfront property contiguous to the homestead. Butler represented Laurel in the quiet title actions.

Believing the liquid assets required to care for Johanna were almost exhausted, Laurel listed the homestead for sale. Laurel sold the homestead to the Turkheimers in late 1986 for $275,000: a $150,000 cash down payment with a balance due of $125,000. The balance, however, was subject to reduction in the event the quiet title action over Russell's contested encroachments proved unsuccessful. Butler represented Laurel in connection with the sale to the Turkheimers.

Johanna Trask died in 1987. Pursuant to Johanna's will, Laurel was appointed as personal representative. Johanna's will provided that the entire estate was to be divided equally between Laurel and Russell. Butler represented Laurel in her capacity as personal representative for Johanna's estate.

Laurel was removed as personal representative of Johanna's estate by superior court judgment in early 1988. The trial judge determined that Laurel had breached her fiduciary duty to Johanna's estate when she attempted to set aside the conveyance of the 13¹/₂ acres and when she sold the homestead to the Turkheimers on disadvantageous conditions. Butler represented Laurel in the removal proceeding. After the hearing, an interim personal represen-

tative was appointed, and in late 1988 the sale of the homestead to the Turkheimers was litigated and the sale was set aside.

Russell was appointed as personal representative for the estates of George and Johanna Trask after the interim personal representative resigned in 1989. Thereafter, Russell threatened to sue Laurel for damages in connection with her actions as attorney-in-fact for Johanna and as personal representative for the estates of George and Johanna Trask. Laurel then signed a settlement agreement with Russell, giving to Russell her share of their parents' estate in exchange for a release of liability for her actions as attorney-in-fact and as personal representative. Laurel also assigned to Russell any claim or cause of action she might have against Butler as an estate beneficiary.

Following the settlement agreement, Russell filed this malpractice action against Butler in his capacity as successor personal representative, on his own behalf as a beneficiary, and as assignee on behalf of Laurel as a beneficiary. Russell claims Butler negligently advised Laurel to file the quiet title action, to sell the homestead on disadvantageous terms, and to contest the probate proceeding removing her as personal representative. Russell argues that Butler's advice depleted the assets of the estate by approximately $90,000. Butler moved for summary judgment asserting no privity of contract with Russell as either an estate beneficiary or as a successor personal representative. Butler's motion was denied. Butler appealed the trial court's decision directly to this court for discretionary review. We accepted review and reverse the trial court's denial of summary judgment.

## PRIMARY ISSUE

■ To establish a claim for legal malpractice a nonclient plaintiff must prove the following elements: (1) the existence of an attorney-client relationship which gives rise to a duty of care to the plaintiff, (2) an act or omission by the attorney in breach of the duty of care, (3) damage to the

plaintiff, and (4) proximate causation between the attorney's breach of duty and the damage incurred. *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992); *Stangland v. Brock*, 109 Wn.2d 675, 679, 747 P.2d 464 (1987). The gravamen of this appeal centers on the first element: whether an attorney hired by the personal representative of an estate owes a duty of care solely to the personal representative, or whether the attorney's duty of care is extended to the nonclient estate and its beneficiaries.

ANALYSIS

I

Traditionally, the only person who could bring a lawsuit for attorney malpractice was the attorney's client. *Bohn v. Cody*, 119 Wn.2d 357, 364-65, 832 P.2d 71 (1992); *Stangland*, 109 Wn.2d at 679; 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 26.4 (3d ed. 1989). Here, the attorney-client relationship existed between Butler as attorney and Laurel as personal representative. *In re Estate of Larson*, 103 Wn.2d 517, 520-21, 694 P.2d 1051 (1985) (in probate the attorney-client relationship exists between the attorney and the personal representative of the estate); *see Stangland*, 109 Wn.2d at 680; *see also* 2 Mallen & Smith § 26.10 (in the absence of an express undertaking, fraud or malice, the attorney for a personal representative owes no duty to and cannot be liable for negligence to heirs, legatees, creditors of the estate or surcharged by the probate judge). Under traditional privity of contract rules Butler does not owe Russell, a nonclient, a duty of care.

Absent privity of contract, two tests were previously applied in Washington to determine whether an attorney owes a duty to a nonclient: the California "multifactor balancing" test and the Illinois "third party beneficiary" test. *Bowman v. John Doe*, 104 Wn.2d 181, 187-88, 704 P.2d 140 (1985); *Stangland*, 109 Wn.2d at 679-82 (under the third party beneficiary test and the multifactor balancing test an attorney who drafts a will for his client owes a duty of care to the nonclient intended beneficiaries of the will); *Bohn*, 119

Wn.2d at 363-67 (under the multifactor balancing test an attorney who represents a borrower may owe a duty of care to the nonclient lender). Russell maintains that Butler owes him a duty of care as a nonclient under either the multifactor balancing test or the third party beneficiary test.

The multifactor balancing test involves analysis of the following six factors:

1. The extent to which the transaction was intended to affect the plaintiff;

2. The foreseeability of harm to the plaintiff;

3. The degree of certainty that the plaintiff suffered injury;

4. The closeness of the connection between the defendant's conduct and the injury;

5. The policy of preventing future harm; and

6. The extent to which the profession would be unduly burdened by a finding of liability.

*Bohn*, at 365. The important inquiry under the multifactor balancing test is whether the attorney's services were intended to affect the plaintiff. *Stangland*, 109 Wn.2d at 680.

In *Goldberg v. Frye*, 217 Cal. App. 3d 1258, 266 Cal. Rptr. 483 (1990), a California appellate court applied the multifactor balancing test to determine whether estate beneficiaries could maintain a legal malpractice cause of action against an attorney hired by the estate administrator. The California appellate court concluded that because the administrator and the attorney did not enter into their relationship intending to affect the estate beneficiaries, no privity of contract exists and liability is not extended to the estate beneficiaries. *Goldberg*, at 1268.

> It would be very dangerous to conclude that the attorney, through performance of his service to the administrator and by way of communication to estate beneficiaries, subjects himself to claims of negligence from the beneficiaries. The beneficiaries are entitled to evenhanded and fair administration by the fiduciary. They are not owed a duty directly by the fiduciary's attorney.

*Goldberg*, at 1269.

The third party beneficiary test is summarized in *Neal v. Baker*, 194 Ill. App. 3d 485, 487, 551 N.E.2d 704, *appeal denied*, 132 Ill. 2d 546 (1990).

> In *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96, the supreme court established the standard for pleading the liability of attorneys to nonclients in legal malpractice actions. The court extended the traditional concept of attorney liability to include third parties who were "intended beneficiaries of the relationship between the client and the attorney." (*Pelham*, 92 Ill. 2d at 20, 440 N.E.2d at 99.) A nonclient must prove that the primary purpose and intent of the attorney-client relationship is to benefit or influence the third party.

In *Neal*, an Illinois appellate court applied the third party beneficiary test to determine whether a beneficiary has standing to sue an estate attorney for legal malpractice. The Illinois court dismissed the beneficiary's cause of action against the executor's attorney after the plaintiff failed to establish the primary purpose and intent of the attorney-client relationship was to benefit the beneficiary. *Neal*, at 487. "The *intent* plaintiff referred to in her complaint was nothing more than the general intent implicit in an executor hiring an attorney to assist in administering an estate." *Neal*, at 488-89.

The multifactor balancing test and the third party beneficiary test were independently created by separate state courts to determine whether an attorney owes a duty to a nonclient. The two tests are indistinguishable in that their primary inquiry focuses on the purpose for establishing the attorney-client relationship. In *Bohn v. Cody*, *supra*, we identified both tests, recognized that they focus on the purpose for establishing the attorney-client relationship, yet exclusively applied the multifactor balancing test because it provided for additional analysis as to whether liability shall be imposed. To eliminate any confusion to trial courts we combine the two tests. The intent to benefit the plaintiff is the first and threshold inquiry in our modified multifactor balancing test, which we construe to have the following elements:

1. The extent to which the transaction was intended to benefit the plaintiff;

2. The foreseeability of harm to the plaintiff;

3. The degree of certainty that the plaintiff suffered injury;

4. The closeness of the connection between the defendant's conduct and the injury;

5. The policy of preventing future harm; and

6. The extent to which the profession would be unduly burdened by a finding of liability.

Thus, under the modified multifactor balancing test, the threshold question is whether the plaintiff is an intended beneficiary of the transaction to which the advice pertained. While the answer to the threshold question does not totally resolve the issue, no further inquiry need be made unless such an intent exists.

In *Stangland v. Brock*, 109 Wn.2d 675, 747 P.2d 464 (1987), we acknowledged the right of an estate beneficiary to bring a cause of action against an attorney under the multifactor balancing test and the third party beneficiary test for errors in drafting a will. In finding a duty to beneficiaries under the multifactor balancing test, we recognized "if the beneficiaries could not recover for the attorney's alleged negligence, no one could." *Stangland*, at 681. This rationale is inapplicable to the facts in this case since estate beneficiaries have two preexisting legal procedures to protect their interest in the estate. Foremost, the personal representative owes the beneficiaries of an estate a fiduciary duty to act in the estate's best interest. *In re Estate of Larson*, 103 Wn.2d at 520. If the personal representative's conduct falls below this standard, the estate beneficiaries may bring a cause of action against the personal representative for breach of fiduciary duty. *See Hesthagen v. Harby*, 78 Wn.2d 934, 942, 481 P.2d 438 (1971); RCW 11.96.060. By directing estate beneficiaries to file suit against the personal representative for breach of fiduciary duty, we properly place the emphasis of estate decisionmaking upon the correct individual — the personal representative. It is

important to note, attorneys hired by a personal representative are not shielded from legal malpractice by this rule. If an estate attorney negligently advises a personal representative, the attorney may be liable to the personal representative for any legal malpractice.

Second, estate beneficiaries are protected against attorney malpractice or a breach of fiduciary duty by the personal representative, or both, if the estate beneficiaries are willing to take a proactive role in estate matters. RCW 11.96.070(2) permits estate beneficiaries to request a judicial proceeding to direct the personal representative to do or abstain from doing any particular act in their fiduciary capacity. Similarly, an estate beneficiary can protect his or her interest in the estate by having the personal representative removed if the personal representative breaches a fiduciary duty to the estate. RCW 11.68.070; RCW 11.28.250.

The multifactor balancing test also requires that we evaluate public policy before finding a duty to a third party. 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 7.9 (3d ed. 1989). The policy considerations against finding a duty to a nonclient are the strongest where doing so would detract from the attorney's ethical obligations to the client. 1 Mallen & Smith § 7.11. This occurs where a duty to a nonclient creates a risk of divided loyalties because of a conflicting interest or of a breach of confidence. 1 Mallen & Smith § 7.11. A conflict of interest arises in estate matters whenever the interest of the personal representative is not harmonious with the interest of an heir. Because estate proceedings may be adversarial, we conclude that policy considerations also disfavor the finding of a duty to estate beneficiaries. *See Neal*, 194 Ill. App. 3d at 488 (an obstacle with extending attorney liability in probate situations is that the personal representative and the estate beneficiaries are often adversaries); 1 Mallen & Smith § 7.11 (the beneficiary test does not apply in an adversarial context); *see also Bowman v. John Doe*, 104 Wn.2d 181, 188-89, 704 P.2d 140 (1985) (in no instance has a court found liability to a third party adversary).

After analyzing our modified multifactor balancing test, we hold that a duty is not owed from an attorney hired by the personal representative of an estate to the estate or to the estate beneficiaries. The multifactor balancing test does not impose legal malpractice liability upon Butler to Russell under these facts for three reasons: (1) the estate and its beneficiaries are *incidental*, not intended, beneficiaries of the attorney-personal representative relationship; (2) the estate heirs may bring a direct cause of action against the personal representative for breach of fiduciary duty; and (3) the unresolvable conflict of interest an estate attorney encounters in deciding whether to represent the personal representative, the estate, or the estate heirs unduly burdens the legal profession.

In support of finding a duty under the facts of this case, Russell cites to two Washington Supreme Court cases: *In re Estate of Larson*, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985) (the fiduciary duties of the attorney run not only to the personal representative but also to the heirs); and *In re Vetter*, 104 Wn.2d 779, 787, 711 P.2d 284 (1985) (respondent failed to realize that as the attorney for the personal representative, he represented the Coyne estate, not just Mr. Coyne). *In re Estate of Larson, supra,* and *In re Vetter, supra,* do not stand for the proposition that privity of contract exists between the attorney hired by the personal representative of an estate and the estate or the estate beneficiaries. Neither case dealt with a cause of action for legal malpractice and neither case applied the multifactor balancing test.

## II

Russell asserts in his brief to this court that Butler violated the Consumer Protection Act (CPA), RCW 19.86. Pursuant to CR 8, a claim for relief must contain a short and plain statement of the claim. Russell's complaint states a cause of action for professional negligence, breach of fiduciary duty, and breach of contract. Russell's complaint does not, however, allege a CPA violation. In a lawsuit for

damages under the CPA, a private party must prove: (1) an unfair or deceptive act or practice, (2) in the conduct of trade or commerce, (3) that has an impact on the public interest, (4) injury to the plaintiff in its business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered. *Mason v. Mortgage Am., Inc.,* 114 Wn.2d 842, 852, 792 P.2d 142 (1990). In *Sprague v. Sumitomo Forestry Co.,* 104 Wn.2d 751, 763, 709 P.2d 1200 (1985), we upheld a trial court's ruling which denied the plaintiff leave to amend his complaint for the third time to allege a violation of the CPA.

■ To give effect to both CR 8 and *Sprague,* a litigant must plead more than general facts in a complaint to properly allege a CPA cause of action. If no reference is required to the CPA, a litigant would not have to amend its complaint to assert a violation. If this were the rule, a litigant could simply await trial and surprise its adversary with a CPA claim so long as enough facts were intermixed in the complaint. In hindsight it is easy to view facts and agree they support a CPA claim. It is a much more difficult, if not an impossible task, to predict whether a plaintiff will raise such a claim when it is not alleged in the complaint. Because Russell did not allege a violation of the CPA in his complaint, we do not decide the merits of this claim.

### III

■ Finally, we need not address the issue of whether an attorney malpractice cause of action is assignable because that issue is not properly before this court. Pursuant to a settlement agreement entered into between Russell and Laurel, Russell claims Laurel assigned to him all legal actions she had against Butler for legal malpractice. The pertinent portion of the settlement agreement reads as follows:

> Without in any way limiting the foregoing release and disclaimer, Laurel hereby assigns to Russell *any claim or cause of action she might have as a beneficiary* of the Trask Estates, against Richard L. Butler or the firm of Cook, Berst, Landeen & Butler, arising in any way from the handling or representation of the Trask Estates, including the actions undertaken under Kitsap County Cause No. 85-2-01150-5, 87-4-00076-1,

or 84-4-00026-0. Laurel agrees to fully cooperate with Russell in the prosecution of any such claims.

(Italics ours.) Clerk's Papers, at 321. The settlement agreement indicates that Laurel assigned to Russell her rights as a beneficiary, and not her rights as a personal representative. Pursuant to our holding, neither an estate beneficiary nor a successor personal representative has privity of contract to bring a malpractice cause of action. Because Laurel did not assign to Russell her right as personal representative to bring a malpractice cause of action against Butler, we need not determine whether a differently worded settlement agreement would have permitted a legal malpractice claim to be assigned.

## CONCLUSION

Summary judgment is mandated when there are no genuine issues as to any material fact and the law supports only one conclusion. CR 56(c). Upon review of the record, Russell has failed to state a claim against Butler for legal malpractice under any recognized theory of law. We reverse the trial court and grant summary judgment in favor of Butler.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, JOHNSON, and MADSEN, JJ., concur.

ANDERSEN, C.J., concurs in the result.