[No. 34386-6-I.   Division One.   May 15, 1995.]

JAY E. LEIPHAM, ET AL, *Appellants*, v. THOMAS C. ADAMS, ET AL, *Respondents*.

*Scott Samuelson* and *Mark Alan Johnson*, for appellants.

*Tyan Lee Ek* and *Merrick, Hofstedt & Lindsey; Ronald Anthony Roberts* and *Eisenhower & Carlson*, for respondents.

ALSDORF, J.* — The beneficiaries of Howard and Alice Morris estates (the Leiphams) contend that the trial court erred in concluding on summary judgment that they had no legal malpractice claim against Ms. Morris' attorney, Thomas C. Adams, Jr. (Adams). They also contend that the trial court erred in concluding that, during her lifetime, Ms. Morris accepted her husband's interest in a joint account, thus precluding Puget Sound Bank,[1] her personal representative, from filing a disclaimer of that interest for tax purposes. We affirm.

I

FACTS

Howard and Alice Morris were husband and wife, and in 1988 they hired attorney Adams to prepare reciprocal durable powers of attorney for them. They retained Adams because they had recently moved to a retirement community in Lacey, Washington, some distance from Tacoma where their long-time attorney practiced. Other than drafting the powers of attorney, Adams did no other work for the Morrises during Howard's lifetime.

On January 13, 1989, Howard Morris died. Shortly thereafter, Ms. Morris asked Adams to assist her in filing for life insurance benefits. Adams accompanied her to her bank where Ms. Morris removed the insurance policies and her

---

*Judge Robert H. Alsdorf is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

[1] Key Bank is the successor in interest to Puget Sound Bank.

husband's will from her safe deposit box. Ms. Morris gave Adams the insurance policies but did not give him a copy of the will.

At the time of Howard Morris' death, the Morrises owned a cash management account (CMA) with Merrill Lynch Pierce Fenner & Smith, Inc. (Merrill Lynch) as joint tenants with right of survivorship. The account contained $957,894.63. Ms. Morris sent a letter to the Morrises' financial consultant at Merrill Lynch, Richard Snyder (Snyder), directing him to change the account from a joint account to a single account in her name and under her Social Security number.

Merrill Lynch requires approval from the account holder for every transaction which occurs in a CMA. Following Howard Morris' death, there was significant activity in the CMA. Snyder obtained the necessary authorization from Ms. Morris for each of these transactions. While Ms. Morris was in control of the account, $477,530.98 worth of securities were sold and $565,009.45 worth of securities were purchased. Ms. Morris also deposited $50,818.30 of her own funds into the account.

Alice Morris died on September 25, 1989. Puget Sound Bank was appointed the personal representative of her estate. The bank was also the personal representative of Howard Morris' estate. Paul Willett (Willett) was the bank's trust officer responsible for both estates.

Puget Sound Bank retained Adams to probate Ms. Morris' estate. Shortly after Adams' appointment, Willett learned that Ms. Morris possessed a CMA with Merrill Lynch. By the time the existence of this account was discovered, the 9-month period for filing a disclaimer of the joint tenancy interest under the Internal Revenue Code and the Washington Revised Code had elapsed.[2]

As beneficiaries of the Morrises' estates, the Leiphams filed suit against Adams, Puget Sound Bank and Willett. The complaint charged Adams with malpractice and Puget Sound Bank and Willett with negligence and breach of fidu-

---

[2] See RCW 11.86.031(2); 26 U.S.C. § 2518(b).

ciary duty for failing to file the disclaimer within the 9-month disclaimer period.

The Defendants filed a motion for summary judgment. In support of the motion, Adams submitted an affidavit in which he stated that he did not draft the Morrises' wills, nor was he involved in general estate planning for the couple. He also said that when he assisted Ms. Morris in filing her insurance claim, he asked her whether someone was handling the probate of her husband's estate. Adams said that Ms. Morris responded by assuring him that the matter had been taken care of and that she only wanted his assistance in collecting the insurance money.

The Leiphams opposed the motion for summary judgment. Albert Leipham, the Morrises' nephew and a beneficiary of their estates, submitted an affidavit. He stated that Alice Morris was a financially unsophisticated woman who never wrote a check until after her husband's death. He also said that at one point he offered Ms. Morris legal counsel regarding the probate of her husband's estate. He said that Ms. Morris told him that she was being represented by Adams, who she was confident was handling matters competently.

Attached to Leipham's affidavit was a note written by Ms. Morris which informed the funeral home which was taking care of her husband's burial that Adams was her attorney. Also attached were two handwritten notes that Ms. Morris gave to Merrill Lynch and her accountant indicating that Adams was her attorney.

The trial court granted summary judgment in favor of Adams, Puget Sound Bank and Willett. This timely appeal follows.

## II

### LEGAL MALPRACTICE

■ The Leiphams first argue that the trial court erred in concluding that they have no legal malpractice claim against Adams. To establish a claim for legal malpractice, the Leiphams must prove the following elements:

██ the existence of an attorney-client relationship which gives rise to a duty of care to the plaintiff, (2) an act or omission by the attorney in breach of the duty of care, (3) damage to the plaintiff, and (4) proximate causation between the attorney's breach of duty and the damage incurred.

*Trask v. Butler*, 123 Wn.2d 835, 839-40, 872 P.2d 1080 (1994). The Leiphams have established neither duty nor causation.

1. Duty

██ Traditionally, the only person who could bring a lawsuit for attorney malpractice was the attorney's client. *Trask*, 123 Wn.2d at 840. Here, the only contractual attorney-client relationship was between Ms. Morris and Adams. The *Trask* court recently announced a new test for determining when an attorney owes a duty of care to a nonclient. *Trask*, at 843. This multifactor balancing test is composed of the following elements:

1. The extent to which the transaction was intended to benefit the plaintiff;
2. The foreseeability of harm to the plaintiff;
3. The degree of certainty that the plaintiff suffered injury;
4. The closeness of the connection between the defendant's conduct and the injury;
5. The policy of preventing future harm; and
6. The extent to which the profession would be unduly burdened by a finding of liability.

*Trask*, at 843. The first of the six *Trask* factors represents the threshold inquiry; if the representation was not intended to benefit the nonclients, they have no standing to sue for malpractice. *Trask*, at 842-43.

The Leiphams acknowledge that under *Trask*, they have no claim against Adams for his work as the attorney for the personal representative of Ms. Morris' estate. However, they contend that *Trask* does not prevent them from bringing a malpractice suit against Adams for failing to advise Ms. Morris to file a disclaimer during her lifetime. The Leiphams contend that Adams performed extensive estate planning for Ms. Morris. Therefore, as the beneficiaries to Ms. Morris' estate, they claim that Adams' representation of her was intended to benefit them.

██ If Adams had performed extensive estate planning for the Morrises, Adams would have had correspondingly broad

duties. *See Stangland v. Brock*, 109 Wn.2d 675, 747 P.2d 464 (1987) (recognizing that estate beneficiaries can bring a malpractice suit against an attorney for errors he made in drafting a will). However, contrary to the Leiphams' argument, we conclude that Adams did not undertake general estate planning for Ms. Morris.

The Leiphams presented evidence of Ms. Morris' understanding of the scope of Adams' representation. They note that Ms. Morris told several people, including her Merrill Lynch broker, that Adams was her attorney. They also submitted an affidavit stating that Ms. Morris told her nephew that Adams was handling her legal affairs.

■■ Adams countered this evidence with his own affidavit stating that Ms. Morris had told him that she did not want his assistance in probating her husband's estate. The Leiphams challenge the trial court's admission of this statement on the ground that it violated the deadman's statute. Because the Leiphams are suing Adams in their own capacity as third party beneficiaries to his representation of Ms. Morris, the deadman's statute is inapplicable. *Erickson v. Kerr*, 125 Wn.2d 183, 189-90, 883 P.2d 313 (1994) (holding that when a party sues in his or her own capacity, the deadman's statute does not apply). Moreover, even if the Leiphams came within the scope of the deadman's statute, the Leiphams waived any right they had to the statute's protection by introducing evidence of other statements made by Ms. Morris. *Bentzen v. Demmons*, 68 Wn. App. 339, 345, 842 P.2d 1015 (1993).

■ When Adams' affidavit is taken into consideration, there appears to be some dispute regarding Ms. Morris' subjective belief as to his role. Nonetheless, this dispute standing alone is not sufficient to generate a genuine issue of material fact as to whether Adams engaged in estate planning intended to benefit the Leiphams. A client's subjective belief is only one of the factors to be considered in determining the scope of representation. Moreover, the client's subjective belief does not control "unless it is reasonably formed based on the attending circumstances, including the attorney's words or actions." *Bohn v. Cody*, 119 Wn.2d 357, 363,

832 P.2d 71 (1992). The Leiphams offer no evidence that any words or actions of Adams led Ms. Morris to believe that he was undertaking general estate planning on her behalf.

On the contrary, both parties appear to agree that Adams performed only two concrete legal tasks for Ms. Morris prior to her death. Adams drafted reciprocal durable powers of attorney for the Morrises. He also accompanied Ms. Morris to her bank when she removed her husband's will from the safe deposit box and assisted her in filing a life insurance claim. Even when combined with the Leiphams' evidence of Ms. Morris' subjective viewpoint, this evidence is insufficient to impose on Adams a general duty to oversee and possibly revise Ms. Morris' estate planning.

The limited scope of Adams' undertakings on Ms. Morris' behalf distinguishes this case from *Linck v. Barokas & Marin*, 667 P.2d 171 (Alaska 1983), relied on by the Leiphams. In *Linck*, the court held that the beneficiaries of an estate had established an attorney-client relationship between them and the attorney for the testator. *Linck*, at 173. They had established that at the time of the testator's death, the attorney was in the process of developing an overall estate plan. *Linck*, at 172. Such representation of a testator by definition includes an intent to benefit the testator's heirs.

In contrast, neither the durable power of attorneys nor the insurance claim has been demonstrated to be directly related to, let alone intended to benefit, Ms. Morris' heirs. Therefore, under *Trask*, the Leiphams have failed to establish that Adams owed them a duty of care. *Trask*, at 842-43. As a result, they cannot state a claim for legal malpractice.

2. Causation

Even if the Leiphams had demonstrated that Adams had some duty to raise the issue of a disclaimer with Ms. Morris, they have entirely failed to present any evidence tending to show that such advice would have led her to file the disclaimer. Thus, they have failed to establish any causal link between Adams' alleged duty and the damage they claim to have suffered.

The Leiphams simply argue that because Ms. Morris died within 9 months of her husband, they would have been better off had Ms. Morris in fact disclaimed her husband's share in the CMA. This is hindsight. There is nothing in the record to indicate that *during her lifetime* Ms. Morris or her attorney would have had reason to believe a disclaimer was prudent.

Ms. Morris was 80 years old at the time of her husband's death. Under Washington law, she is presumed to have a life expectancy of another $7^1/2$ years. 6 Wash. Prac., WPI app. B (3d ed. 1989). The record submitted on summary judgment contains no information on the state of her health. There is nothing to suggest that Ms. Morris should have anticipated death in less than the normal life span, let alone within a few months.

The record is also silent as to the nature and value of her other assets. No evidence was presented to show that she ultimately would not need her husband's interest in the CMA to insure her own financial security. Reasonable and prudent retirement planning requires consideration not only of ordinary daily living expenses, but also the need to prepare for possible future nursing home or medical expenses.

There is simply no evidence that Ms. Morris was so rich or death so imminent that she should or would have filed a disclaimer. In the absence of such evidence from the Leiphams, summary judgment was proper.

### III
#### ACCEPTANCE OF THE CMA

The Leiphams also contend that the trial court erred in granting summary judgment in favor of Puget Sound Bank and Willett. They argue that Puget Sound Bank and Willett were negligent in failing to file a disclaimer on Ms. Morris' behalf within the 9-month disclaimer period.

We conclude that Ms. Morris had accepted her husband's interest in the CMA while she was alive. A disclaimer after her death would therefore have been futile.

Under both state and federal law, a beneficiary may not disclaim an interest in property if he or she has already

accepted an interest in or benefit from that property. The relevant portion of the Washington statute reads:

> A beneficiary may not disclaim an interest if:
>
> (1) the beneficiary has accepted the interest or a benefit thereunder[.]

RCW 11.86.051.

Similarly, the federal statute reads:

> For purposes of subsection (a), the term "qualified disclaimer" means an irrevocable and unqualified refusal by a person to accept an interest in property but only if —
>
>     . . . .
>
>     (3) such person has not accepted the interest or any of its benefits . . ..

26 U.S.C. § 2518(b). Federal regulations define acceptance as follows:

> (d) *No acceptance of benefits—(1) Acceptance.* A qualified disclaimer cannot be made with respect to an interest in property if the disclaimant has accepted the interest or any of its benefits, expressly or impliedly, prior to making the disclaimer. Acceptance is manifested by an affirmative act which is consistent with ownership of the interest in property. Acts indicative of acceptance include using the property or interest in property; accepting dividends, interest, or rents from the property; and directing others to act with respect to the property or interest in property. . . .

26 C.F.R. § 25.2518-2.

▮ The Leiphams contend that Ms. Morris' apparent control of the CMA was consistent with ownership of her half interest in the account and did not destroy her right to disclaim her husband's interest. In support of their argument, the Leiphams submitted an affidavit of a tax expert stating his opinion that the right of disclaimer had not been destroyed. This court cannot treat as evidence legal opinions contained in affidavits. *King Cy. Fire Protec. Dists. v. Housing Auth.*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994); *Parkin v. Colocousis*, 53 Wn. App. 649, 653, 769 P.2d 326 (1989). The only other authority the Leiphams rely on are IRS private letter rulings, which may not be used or cited as precedent. 26 U.S.C. § 6110(j)(3); *David R. Webb Co. v. Commissioner*, 708 F.2d 1254, 1257 n.1 (7th Cir. 1983).

■■ There is ample evidence to support the trial court's ruling that Ms. Morris accepted her husband's interest in the CMA. In Washington, as elsewhere, the acceptance of a gift beneficial to the donee will be presumed. *Sinclair v. Fleischman*, 54 Wn. App. 204, 209, 773 P.2d 101, *review denied*, 113 Wn.2d 1032 (1989); *Estate of Selby v. United States*, 726 F.2d 643, 647 (10th Cir. 1984) (holding that the presumption in favor of acceptance is applicable when determining whether a person is precluded from filing a disclaimer). The presumption in favor of acceptance is further supported by the absence of evidence indicating that Ms. Morris did not want or need her husband's interest in the CMA for her own financial security.

There was also substantial evidence that Ms. Morris exercised control over the CMA. She instructed Merrill Lynch to register the account under her name and Social Security number. She then proceeded to authorize substantial sales and purchases of securities within the account. She deposited $50,000 of her own money into the account. These facts are consistent with the presumption that Ms. Morris accepted her husband's interest in the CMA.

The Leiphams did not dispute these facts. Therefore, even if we deem the few days between Ms. Morris' death and the end of the disclaimer period as sufficient to have required Puget Sound Bank and Willett to consider filing a disclaimer, no disclaimer can be effective when, as here, there has been an acceptance as a matter of law. As a result, summary judgment in favor of Puget Sound Bank and Willett was appropriate.

■ Finally, the Leiphams argue that Puget Sound Bank had a duty to sue Adams for malpractice in performing his duties as attorney to the personal representative. The Leiphams did not raise this issue before the trial court. This court will not address an issue which was not raised below. RAP 2.5(a); *Seattle-First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 240, 588 P.2d 1308 (1978). Even if we were to address the issue, our conclusion that Ms. Morris had accepted her husband's interest at the time of her death

would foreclose any suit against Adams for malpractice as attorney to the personal representative of her estate.

We affirm.

COLEMAN and BECKER, JJ., concur.

Review denied at 127 Wn.2d 1022 (1995).