IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

THE DOCTORS COMPANY, a ) No. 72163-1-I
California Interinsurance Exchange, )
)
Appellant, )
)
v. )
)
BENNETT BIGELOW & LEEDOM, P.S., )
a Washington professional services )
corporation; AMY THOMPSON FORBIS )
and JOHN DOE FORBIS, her husband, )
and the marital community comprised ) UNPUBLISHED OPINION
thereof; and JENNIFER LYNN MOORE )
and JOHN DOE MOORE, her husband, ) FILED: May 26, 2015
and the marital community comprised )
thereof, )
)
Respondents. )
_____ )

2015 MAY 26 AM 10: 52
COURT OF APPEALS DIV I
STATE OF WASHINGTON

VERELLEN, A.C.J. — The Doctors Company (TDC) appeals the summary

judgment dismissing its legal malpractice claim against Bennettt Bigelow & Leedom

(BBL), the law firm TDC hired to represent its insureds. TDC contends BBL owed it a

duty of care based on three legal theories: a direct attorney-client relationship, the

Restatement (Third) of the Law Governing Lawyers § 51 (2000), and a third party

beneficiary of BBL's representation of TDC's insureds. But TDC did not assert a direct

attorney-client relationship theory below, our Supreme Court recently declined to adopt

Restatement § 51, and TDC was not an intended beneficiary of BBL's representation of

TDC's insureds. Therefore, the trial court properly dismissed TDC's legal malpractice claim against BBL. We affirm.

## FACTS

TDC insured physicians Mitchell Nudelman and Heather Moore and their employer, Bellegrove Ob/Gyn, Inc. (the insureds). TDC provided a combined $5,000,000 in coverage to its insureds. The two physicians, Bellegrove Ob/Gyn, and Overlake Hospital Medical Center were sued by Mark and Jean Gabarra for medical malpractice after their baby suffered severe disability due to oxygen deficiency during delivery.

TDC undertook the defense without a reservation of rights and retained BBL to defend its insureds. BBL attorneys Amy Forbis and Jennifer Moore represented TDC's insureds. The insureds agreed to joint representation after Forbis, Moore, and TDC's claims representative, Nancy Nucci, explained the risks and benefits of joint representation. Nucci recalled that soon after the case was filed, she discussed with Forbis the possibility of a written conflict waiver. But BBL never obtained the informed written consent of its clients.

Nucci and Anthony Luttrell, TDC's regional assistant vice president, discussed whether BBL's joint representation of TDC's insureds involved a conflict. Luttrell told Nucci "to let [BBL] *tell us* if there was a conflict."[1] In late 2008, Forbis and Moore told Nucci that neither a present nor potential conflict of interest existed in representing all three insureds. Nucci, Forbis, Dr. Nudelman, and Dr. Moore had an "ongoing

---

[1] Clerk's Papers (CP) at 1851.

discussion" about conflicts throughout the representation.[2] As late as April 2010, Forbis believed "nothing suggested that there were any brewing conflicts" at that time."[3]

Luttrell acknowledged in his deposition that BBL's clients were the insureds, not TDC.

By late July 2010, Moore informed Nucci that Dr. Frank Manning, an expert retained by TDC to represent both physicians, "believe[d] the care provided by all was within the standard of care."[4] Dr. Manning was "not critical at all of the way Dr. Nudelman managed the delivery."[5] Moore stated that when she spoke with Dr. Manning in April 2010, he was fully supportive of both physicians' care. But Dr. Manning adamantly disagreed with Moore's characterization of his expert opinion. He later testified that he was critical of Dr. Nudelman's care, that he could not support him at trial, and that he expressed those views to Moore in April 2010.

Once TDC realized Dr. Manning and several other experts could not fully support Dr. Nudelman, TDC decided BBL should withdraw as defense counsel. Six weeks before trial, BBL withdrew as counsel for TDC's insureds based upon an undisclosed conflict of interest. TDC agreed to pay for independent counsel to represent each of its insureds. TDC also appointed new defense counsel for its insureds. The trial court denied new defense counsels' motion to continue the early November 2010 trial date.

The Gabarras settled with Overlake Hospital for almost $10,000,000. On behalf of its insureds, TDC settled with the Gabarras for $10,150,000, which was $7,000,000

---

[2] CP at 610.

[3] CP at 232.

[4] CP at 71.

[5] CP at 71.

above the insureds' policy limits.

TDC sued BBL under various legal theories, including legal malpractice. The trial court granted BBL summary judgment.

TDC appeals.

## ANALYSIS

We review a summary judgment order de novo, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party.[6] Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[7] We review whether a duty of care exists de novo.[8]

TDC argues BBL owed it a duty of care because TDC sought and received legal advice from BBL about conflicts of interest and thus established a direct attorney-client relationship. We disagree. TDC did not raise or preserve this legal theory below.

We "may refuse to review any claim of error" not raised in the trial court.[9] "[A]n argument neither pleaded nor argued to the trial court cannot be raised for the first time on appeal."[10] "Similarly, we do not consider theories not presented below."[11] The purpose of this requirement is to ensure that the trial court has an opportunity to

---

[6] Parks v. Fink, 173 Wn. App. 366, 374, 293 P.3d 1275 (2013).

[7] CR 56(c); Bohn v. Cody, 119 Wn.2d 357, 362, 832 P.2d 71 (1992).

[8] Snyder v. Med. Serv. Corp. of E. Wash., 145 Wn.2d 233, 243, 35 P.3d 1158 (2001).

[9] RAP 2.5(a); Bankston v. Pierce County, 174 Wn. App. 932, 941, 301 P.3d 495 (2013); Malgarini v. Wash. Jockey Club, 60 Wn. App. 823, 826, 807 P.2d 901 (1991).

[10] Wash. Fed. Sav. v. Klein, 177 Wn. App. 22, 29, 311 P.3d 53 (2013), review denied, 179 Wn.2d 1019 (2014).

[11] Wilson & Son Ranch, LLC v. Hintz, 162 Wn. App. 297, 303, 253 P.3d 470 (2011).

consider and rule on all claims and legal theories.[12] "We need not consider on appeal a theory which the lower court had no effective opportunity to consider and rule upon at trial."[13]

TDC's numerous motions in the trial court nowhere assert a legal theory of a duty of care based on a direct attorney-client relationship. TDC characterized and argued the issue below as whether BBL owed TDC, as a *nonclient*, a duty of care under Trask v. Butler[14] or under *Restatement* § 51. TDC principally argued BBL owed TDC a duty of care as a "non-client,"[15] based on the "tripartite relationship,"[16] and as an intended third party beneficiary. For example, TDC's first motion for summary judgment framed the duty of care issue under the Trask balancing test and *Restatement* § 51 for nonclients. TDC argued the trial court should conclude that a duty of care arose under the Trask "modified multifactor balancing test."[17] In TDC's "rebuttal" memorandum, TDC framed the issue as whether "professionals [owe] a duty of care to third parties," admitting that BBL's clients were TDC's insureds and not TDC.[18] Moreover, TDC argued in a separate motion for summary judgment that Trask and *Restatement* § 51 govern and that BBL's duty to TDC is derivative from their duty to TDC's insureds: BBL's clients. In TDC's response to BBL's motion for partial summary judgment, TDC concedes it was

---

[12] Evans v. Mercado, 184 Wn. App. 502, 509, 338 P.3d 285 (2014); In re Rapid Settlements v. Symetra Life Ins. Co., 166 Wn. App. 683, 695, 271 P.3d 925 (2012).

[13] Commercial Credit Corp. v. Wollgast, 11 Wn. App. 117, 126, 521 P.2d 1191 (1974).

[14] 123 Wn.2d 835, 872 P.2d 1080 (1994).

[15] CP at 1039.

[16] CP at 1100.

[17] CP at 94.

[18] CP at 813.

not BBL's client, stating that Moore misrepresented a "critical fact to a third person, *not a client*, [TDC]," in July of 2010.[19]

TDC's arguments that it raised the direct attorney-client relationship theory below are not compelling.

First, TDC highlights its trial court references to and quotes from an insurance law treatise regarding the fiduciary duty that an attorney owes to his or her client. Like a legal malpractice claim, "a breach of a fiduciary duty claim must generally be grounded on an attorney–client relationship unless it satisfies the [Trask] multi-factor balancing test."[20] In other words, a lawyer not only owes a client a fiduciary duty but may also owe a nonclient a fiduciary duty under Trask if the "transaction was meant to benefit the [nonclient]."[21] Because TDC argued BBL owed it a fiduciary duty based on the Trask multifactor balancing test for nonclients, TDC's references and quotes about a fiduciary duty did not alert the trial court to a theory that BBL owed TDC a duty of care based on a direct attorney-client relationship with TDC.

Second, TDC argues that its citation of ACE American Insurance Co. v. Sandberg, Phoenix & Von Gontard, PC to the trial court raised the direct duty of care theory.[22] TDC did refer to ACE as recognizing a "direct malpractice claim by a primary insurer against the attorney retained by the primary insurer."[23] But this passing reference did not give the trial court notice that TDC alleged a duty of care based on the

---

[19] CP at 392 (emphasis added).

[20] TOM ANDREWS, ROB ARONSON & MARK FUCILE, THE LAW OF LAWYERING IN WASHINGTON, 15-15 to -16 (2012).

[21] Hetzel v. Parks, 93 Wn. App. 929, 937, 971 P.2d 115 (1999).

[22] 900 F. Supp. 2d 887 (S.D. Ill. 2012).

[23] Id. at 902 (emphasis omitted).

theory that TDC and BBL formed a direct attorney-client relationship. We do not believe that "a single, isolated" citation such as this, made in a response to a partial summary judgment motion, is sufficient to preserve the issue for review.[24] Specifically, TDC never argued to the trial court that an attorney-client relationship was formed between TDC and BBL because TDC requested and received legal advice from BBL.

Third, TDC alleges it apprised the trial court of its duty of care claim in its motion for partial summary judgment. TDC framed the issue as whether an "insurance defense counsel owe[s] a legal duty to the insurance carrier hiring them; paying them; and bearing the financial brunt and results of their negligence."[25] But this general reference was made in the context of a motion clearly based upon Trask, Restatement § 51, and duties owed to a nonclient: "Duty Owed by Lawyer to Non-Client"[26]; "lawyer liability to non-clients"[27]; "multifactor balancing test"[28]; "six factors of . . . Trask"[29]; "a duty of care to certain nonclients"[30]; and "a duty pursuant to the modified multifactor balancing test."[31]

Finally, the trial court denied TDC's motion for partial summary judgment focusing on the lack of a duty owed under Trask. The trial court did not mention a direct

---

[24] Olson v. Siverling, 52 Wn. App. 221, 230 n.6, 758 P.2d 991 (1988); see also Wash. St. Boundary Review Bd. for King County, 122 Wn.2d 648, 670, 860 P.2d 1024 (1993) ("In order for an issue to be properly raised before an administrative agency, there must be more than simply a hint or a slight reference to the issue in the record.").

[25] CP at 87.

[26] CP at 88.

[27] CP at 88.

[28] CP at 88.

[29] CP at 90.

[30] CP at 92.

[31] CP at 94.

attorney-client relationship theory or make any reference to whether TDC requested and received legal advice from BBL. Notably, in its motion for reconsideration, TDC did not suggest the trial court failed to address a theory that TDC had formed a direct attorney-client relationship with BBL; rather, TDC argued only that BBL "owed a duty under Trask" to TDC.[32] Therefore, we decline to review TDC's theory raised for the first time on appeal that BBL owed TDC a duty of care based on a direct attorney-client relationship.

TDC argues we should adopt *Restatement* § 51. Because our Supreme Court declined to adopt *Restatement* § 51 in its recent decision of Stewart Title Guaranty Co. v. Sterling Savings Bank, we also decline to adopt it.[33]

*Restatement* § 51 provides an alternative approach to the limited circumstances in which an attorney owes a nonclient a duty of care. Under *Restatement* § 51(3), an attorney owes this duty to a nonclient when the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient, that such a duty would not significantly impair the lawyer's performance of obligations to the client, and that the absence of such a duty would make enforcement of those obligations to the client unlikely.

The comments to *Restatement* § 51 detail the circumstances when it would apply. For example, an attorney's duty of care to a nonclient arises "when doing so will both implement the client's intent and serve to fulfill the lawyer's obligations to the client without impairing performance of those obligations in the circumstances of the

---

[32] CP at 1037.
[33] 178 Wn.2d 561, 311 P.3d 1 (2013).

representation."[34] This duty "exists only when the client intends to benefit the third person as one of the primary objectives of the representation."[35] In the insurance context under *Restatement* § 51, "a lawyer designated by an insurer to defend an insured owes a duty of care to the insurer . . . [for] matters as to which the interests of the insurer and insured are not in conflict, whether or not the insurer is held to be a co-client of the lawyer."[36] "Recognizing that the lawyer owes a duty to the insurer promotes enforcement of the lawyer's obligations to the insured."[37]

In Stewart Title, a title insurer retained a law firm to defend its insured from a construction company's lien priority claim. The construction company prevailed. The insurer then sued the law firm for legal malpractice. Applying Trask, our Supreme Court held that the law firm did not owe Stewart Title, the nonclient insurer, a duty of care because Stewart Title did not establish it was an intended beneficiary of the law firm's services to the insured.[38]

Stewart Title expressly rejected arguments now advanced by TDC. For example, Stewart Title held that an "alignment of interests is insufficient to find a duty running from [the law firm] to [the title insurer]" for purposes of a legal malpractice claim.[39] An insurer must satisfy Trask to sue its insured's attorney for legal malpractice, and there is

---

[34] RESTATEMENT § 51 cmt. f.

[35] Id.

[36] Id. cmt. g.

[37] Id.

[38] Stewart Title, 178 Wn.2d at 570.

[39] Id. at 567.

no presumption that a nonclient insurer is an intended beneficiary.[40] Importantly, the parties in Stewart Title expressly argued whether Restatement § 51 should be adopted. Our Supreme Court did not adopt Restatement § 51. Stewart Title's holding, that an insurer must show the "'transaction was intended to benefit' a third party to some extent" before a court will permit that party to sue for malpractice, controls here.[41] Further, even if "an insurer's and insured's interests happen to align in some respects," that "does not by itself show that the attorney or client intended the insurer to benefit from the attorney's representation" of its insureds.[42] Our Supreme Court "recogniz[ed] that other jurisdictions have come to a different conclusion" by allowing an insurer to sue retained defense counsel for legal malpractice, citing Restatement § 51.[43] The holding and analysis of Stewart Title reject the approach taken by states that have adopted Restatement § 51.[44]

To the extent TDC contends we should "recalibrate"[45] Trask and Stewart Title by adopting Restatement § 51, we decline the invitation. Consistent with Stewart Title's rejection of Restatement § 51, we do not adopt it here.

---

[40] See id. (rejecting the argument that "as long as there is no actual conflict of interest between an insurer and its insured, a nonclient insurer is presumed to be an intended beneficiary" and can sue the insured's attorney for malpractice).

[41] Id.

[42] Id.

[43] Id. n.2.

[44] Additionally, the dissent in Mazon v. Krafchick vigorously argued for the adoption of the restatement's approach, without success. 158 Wn.2d 440, 455-56, 144 P.3d 1168 (2006) (Sanders, J., dissenting); id. at 447-53 (holding that no duties exist between co-counsel that would allow recovery for lost or reduced prospective fees and declining to expand or abolish the Trask multifactor balancing test by adopting Restatement § 51).

[45] Appellant's Br. at 22.

Finally, TDC argues BBL owed TDC a duty of care as a nonclient under Trask.

We disagree.

Generally, an attorney owes a duty of care only to clients; privity of contract limits an attorney's liability for malpractice.[46] In other words, only an attorney's client may sue for legal malpractice.[47] But, in limited circumstances, an attorney may owe a nonclient a duty of care based on a multifactor balancing test that our Supreme Court adopted over 20 years ago in Trask.[48] Under this test, we consider six factors to determine if an attorney owes a nonclient a duty of care:

(1)     *The extent to which the transaction was intended to benefit the plaintiff* [, i.e., the nonclient third party suing the attorney];

(2)     The *foreseeability* of harm to the plaintiff;

(3)     The degree of certainty that the plaintiff suffered injury;

(4)     The closeness of the connection between the defendant's conduct and the injury;

(5)     The policy of preventing future harm; and

(6)     The extent to which the profession would be unduly burdened by a finding of liability.[49]

The first factor "is the 'primary inquiry' in determining an attorney's liability to [nonclient] third parties."[50] "If the attorney's clients or the attorney did not intend the

_____

[46] Bohn, 119 Wn.2d at 364-65.

[47] Parks, 173 Wn. App. at 377.

[48] Trask, 123 Wn.2d at 842-43; Stangland v. Brock, 109 Wn.2d 675, 680, 747 P.2d 464 (1987); Dewar v. Smith, ___ Wn. App. ___, 342 P.3d 328, 334-35 (2015).

[49] Trask, 123 Wn.2d at 843 (emphasis added).

[50] Stewart Title, 178 Wn.2d at 566 (quoting Trask, 123 Wn.2d at 842); Leipham v. Adams, 77 Wn. App. 827, 832, 894 P.2d 576 (1995) ("The first of the six Trask factors represents the threshold inquiry.").

representation to benefit a nonclient, that nonclient has no standing to sue."[51] "An 'intended beneficiary' of the transaction under <u>Trask</u> means just that—the transaction must have been intended to benefit [the nonclient third party]."[52] The relevant inquiry is what the client intended to accomplish in the litigation, not what the nonclient hoped to gain by it.[53]

No Washington court has ever applied <u>Trask</u> to hold that an attorney retained by an insurer to defend its insureds owes an additional duty of care to the insurer. Washington courts have generally been reluctant to "extend professional malpractice protection to [nonclient] third parties" because such a duty could create potential conflicts.[54]

In <u>Stewart Title</u>, our Supreme Court recently applied <u>Trask</u> in the insurance defense context, holding that a nonclient insurer who hired an attorney to defend its

---

[51] <u>Dewar</u>, 342 P.3d at 334; <u>see also</u> <u>Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey P.C.</u>, 180 Wn. App. 689, 694, 324 P.3d 743, <u>review denied</u>, 181 Wn.2d 1008 (2014).

[52] <u>Strait v. Kennedy</u>, 103 Wn. App. 626, 631, 13 P.3d 671 (2000).

[53] <u>Id.</u> at 631-32.

[54] <u>McKasson v. State</u>, 55 Wn. App. 18, 28, 776 P.2d 971 (1989); <u>see also</u> <u>Trask</u>, 123 Wn.2d at 845 (an attorney hired by the personal representative of an estate did not owe a duty of care to the estate or the estate beneficiaries); <u>Bowman v. John Doe Two</u>, 104 Wn.2d 181, 188-89, 704 P.2d 140 (1985) (an attorney did not owe a duty of care to his client's adversary, the mother, where the attorney was hired by a child seeking alternative residential placement away from his mother); <u>Leipham</u>, 77 Wn. App. at 832-34 (an attorney did not owe estate beneficiaries a duty of care for failing to file a disclaimer of a joint tenancy interest); <u>Harrington v. Pailthorp</u>, 67 Wn. App. 901, 905-10, 841 P.2d 1258 (1992) (an attorney did not owe a former client's ex-husband a duty of care in a custody modification proceeding); <u>Morgan v. Roller</u>, 58 Wn. App. 728, 732-33, 794 P.2d 1313 (1990) (an attorney did not owe beneficiaries of his former client's testamentary plan a duty of care to disclose the attorney's views of the former client's disability); ANDREWS, ARONSON & FACILE, <u>supra</u>, at 15-5 ("[T]he circle of nonclients with standing to raise a malpractice claim remains fairly narrow.").

insured was not an intended beneficiary of the attorney's representation.[55] As we previously noted, the alignment of interests between the insurer and the insured during the representation and the insured's attorney's duty to keep the insurer informed of the litigation's progress were insufficient to establish that the insurer was an intended beneficiary of the representation.[56] An alignment of interests "does not by itself show that the attorney or client *intended* the insurer to benefit from the attorney's representation of the insured."[57] Because neither the attorney nor the client intended the insurer to be a beneficiary of the attorney-client relationship, the insurer did not satisfy the Trask first element.[58] The attorney therefore did not owe the nonclient insurer a duty of care in Stewart Title.

Similarly, Clark County Fire District No. 5 v. Bullivant Houser Bailey PC held that in an insurance defense context, the retention of an attorney to represent a fire district was not intended to benefit the nonclient insurer who retained the attorney to represent its insured.[59]

Consistent with Stewart Title and Clark County Fire, the alleged alignment of interests between TDC and its insureds, together with BBL's corresponding duty to report to the insurer, does not mean that TDC's insureds or BBL intended to benefit TDC. The trial court acknowledged in its detailed order denying TDC's summary judgment motion that TDC "was not the intended beneficiary of [BBL's] representation";

---

[55] Stewart Title, 178 Wn.2d at 569-70.

[56] Id.

[57] Id. at 567.

[58] Id.

[59] 180 Wn. App. 689, 699-700, 324 P.3d 743 (2014).

rather, BBL's clients, the insureds, were the intended beneficiaries to whom BBL owed a duty of care.[60]

The medical malpractice insurance policies here were intended to protect the doctors and their personal assets from liability. The physicians and their employer expected defense counsel "to look out solely and exclusively for [their] interests" in the event of litigation.[61] In sum, TDC retained BBL to represent only TDC's insureds.

TDC's contention that a tripartite, insurance defense relationship is always intended to benefit the insurer as well as the insured would fundamentally alter Trask and "could also make any third party payor an intended beneficiary of a legal services contract to whom a duty of care runs, in violation of RPC 5.4(c)."[62] TDC does not establish that BBL or TDC's insureds intended to benefit TDC. Therefore, BBL did not owe TDC a duty of care under Trask.[63]

---

[60] CP at 1958.

[61] CP at 1468.

[62] Stewart Title, 178 Wn.2d at 568. RPC 5.4(c) states that a "lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."

[63] TDC's supplemental statement of authorities submitted the day before oral argument in this court cited a case applying a negligent misrepresentation cause of action. But the trial court's summary judgment ruling did not directly or indirectly address any negligent misrepresentation cause of action.

TDC's motions for summary judgment, memorandum submitted on the motions for summary judgment, and its arguments at the summary judgment hearing made no reference to a negligent misrepresentation theory. Although TDC generally alleged BBL's attorneys committed misrepresentation and fraud in their representation of TDC's insureds, these allegations were never offered in the context of a negligent misrepresentation cause of action. The trial court's order did not address any negligent misrepresentation theory, and TDC never referred to negligent misrepresentation in its motion for reconsideration. Because TDC did not raise a negligent misrepresentation theory on summary judgment, that legal theory is not before us on appeal.

## CONCLUSION

The trial court here properly granted BBL summary judgment concluding that BBL did not owe TDC, a nonclient, a duty of care arising from BBL's representation of TDC's insureds.

We affirm.

_Verellen, J._

WE CONCUR:

_Schindler, J._

_Cox, J._