COURT OF APPEALS DIV I
2014 NOV 17 AM 9: 48



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JULIA EVANS; and MARY EVANS and )    NO. 71390-6-I
JEFFREY EVANS, individually and the )
marital community composed thereof, )    DIVISION ONE
)
Petitioners, )
)
v. )
)
)
KATHIA MERCADO, METROPOLITAN )    PUBLISHED OPINION
CASUALTY INSURANCE COMPANY, )
and SAFECO INSURANCE COMPANY )    FILED: November 17, 2014
OF AMERICA, )
         Respondents. )
_____ )

LAU, J. — Julia Evans sued her underinsured motor (UIM) vehicle insurers Metropolitan Casualty Insurance Company and Safeco Insurance Company of America.[1] She submitted the case to mandatory arbitration under chapter 7.06 RCW. Metropolitan opposed mandatory arbitration, essentially arguing that the arbitrator lacked authority to enter a gross award (the total collision damage inclusive of payments already received from the tortfeasor and personal injury protection (PIP) benefits) exceeding the statutory limit of $50,000. Evans responds that nothing prohibits the arbitrator from determining her

---

[1] We refer to both insurers as Metropolitan.

total collision damages, reducing the amount by any setoffs, and entering a net award not to exceed $50,000. The trial court ruled the case "is not arbitrable" and "transferred" it to the civil trial calendar. Clerk's Papers (CP) at 16 Because nothing prohibits an arbitrator from determining a UIM claimant's total collision damages, reducing the amount by any setoffs, and entering a net award not to exceed the statutory limit, here $50,000, we reverse the trial court's order and remand for further proceedings consistent with this opinion.

## FACTS

The main facts are not disputed.[2] In December 2006, Julia Evans sustained injuries in a rear-end collision with Charity Edwards. Evans settled with Edward's liability insurer for the policy limits of $25,000. She then sued the UIM insurers,[3] Metropolitan Casualty Insurance Company and Safeco Insurance Company, alleging that her total damages exceeded $25,000. Metropolitan and Safeco also paid personal injury protection benefits for Evans's medical treatment. The parties dispute causation and damages but not Edward's liability.

Evans sought to resolve her case under chapter 7.06 RCW's mandatory arbitration provisions and the Mandatory Arbitration Rules (MAR) applicable to superior courts. She filed a note for trial setting and initial statement of arbitrability to transfer her case to mandatory arbitration in accordance with the MAR and Snohomish County Local Mandatory Arbitration Rules (SCLMAR). Evans's statement indicated her case was

---

[2] Evans's complaint also alleged separate liability against defendant Kathia Mercado based on a 2012 vehicle accident in which Evans was a passenger. That accident is not before us in this appeal.

[3] Evans was a passenger in an insured vehicle and an insured under her family policy.

eligible for mandatory arbitration because she sought only a money judgment and no claim exceeded $50,000.[4]

The parties disagreed on whether Evans's case qualified under the $50,000 statutory damages cap for mandatory arbitration. Metropolitan filed a motion to contest arbitration of Evans's UIM claims and to reset the case for trial.[5] Metropolitan argued that Evans must adhere to the statutory damages cap in order to invoke the procedural benefits of mandatory arbitration. That requires the arbitrator to enter a gross award not to exceed $50,000.

Evans opposed the motion, arguing the award cannot exceed $50,000 but nothing prohibits the arbitrator from determining her total damages, reducing the amount by any offsets, and entering a net award not to exceed $50,000.

In a written October 3, 2012 order, the trial court granted Metropolitan's motion, ruled the case was not arbitrable, and transferred it to the civil trial calendar. The court also denied Evans's reconsideration motion. A commissioner of this court granted Evans's motion for discretionary review.

## ANALYSIS

The parties agree that a mandatory arbitration award cannot exceed the $50,000 statutory damages cap. They disagree on how the arbitrator determines the amount of the award when offset and setoff amounts apply.

---

[4] Counties have statutory authority to provide for mandatory arbitration for civil actions where the sole relief is a money judgment and where no party asserts a claim in excess of $50,000. Snohomish County has approved mandatory arbitration for claims not in excess of $50,000.

[5] Safeco joined that motion but filed no briefs on appeal.

The parties agree that de novo review applies to a trial court's application of the mandatory arbitration rules. Twitchell v. Kerrigan, 175 Wn. App. 454, 461, 306 P.3d 1025 (2013).

"We interpret the mandatory arbitration rules as though they were drafted by the legislature, and we construe these rules consistently with their purpose." Malted Mousse, Inc. v. Steinmetz, 150 Wn.2d 518, 525, 79 P.3d 1154 (2003). "The primary goal of statutory construction is to carry out legislative intent." Cockle v. Dep't of Labor & Indus., 142 W.2d 801, 807, 16 P.3d 583 (2001).

"Mandatory arbitration, a statutory system, was designed to take relatively small and simple cases off the superior court's docket and resolve them quickly and inexpensively." Mercier v. GEICO Indem. Co., 139 Wn. App. 891, 899, 165 P.3d 375 (2007). The system was "intended to provide a relatively expedient procedure to resolve claims where the plaintiff is willing to limit the amount claimed." Williams v. Tilaye, 174 Wn.2d 57, 63, 272 P.3d 235 (2012); see also Twitchell, 175 Wn. App. at 465 (mandatory arbitration system helps "reduce the delay in hearing civil cases"); Stanley v. Cole, 157 Wn. App. 873, 888, 239 P.3d 611 (2010) (system serves "judicial economy goals" by "providing a simplified and economical way to resolve disputes involving claims of $50,000 or less."); Sorenson v. Dahlen, 136 Wn. App. 844, 858, 149 P.3d 394 (2006) (system's "foremost goal" is reduction of court congestion and delays in hearing civil cases). SCLMAR 1.1(a) provides:

> Purpose. The purpose of mandatory arbitration of civil actions under RCW 7.06, as implemented by the Mandatory Arbitration Rules (MAR), is to provide a simplified and economical procedure for obtaining the prompt and equitable resolution of disputes involving claims of fifty thousand dollars ($50,000.00) or less, exclusive of attorney fees, interest and costs, and claims in which the sole relief sought is the establishment, modification, or termination of maintenance or child support payments regardless of the number or amount of such payments. Mandatory Arbitration Rules (MAR) as supplemented by these Local Mandatory

Arbitration Rules (SCLMAR) are not designed to address every question that may arise during the arbitration process, and the rules give considerable discretion to the arbitrator. The arbitrator should not hesitate to exercise that discretion. Arbitration hearings should be informal and expeditious, consistent with the purpose of relevant statutes and rules.

In general, Washington has a strong public policy favoring arbitration. Canal Station N. Condo. Ass'n v. Ballard Leary Phase II, LP, 179 Wn. App. 289, 297, 322 P.3d 1229 (2013). Accordingly, we "indulge every presumption in favor of arbitration, whether the issue is construction or an arbitration clause or allegation of waiver, delay, or another defense to arbitrability." Canal Station, 179 Wn. App. at 297.

Evans contends:

[T]he UIM benefits. . . are for damages she sustained over the amount of the tortfeasor's [$25,000] liability insurance limit.
. . . . She will prove her case by introducing evidence of her damages,[6] what the liability carrier had for limits, and will request and award within the limits of the insurance policy and MAR for a money judgment for the difference.

Appellant's Reply Br. at 10.

Metropolitan responds, "[T]he maximum award of $50,000 would be subject to all applicable setoffs, including but not limited to the $25,000 paid by Ms. Edwards liability insurer." Resp't's Br. at 3. As applied here, Metropolitan argues that under the UIM policies, Evans's maximum recovery in arbitration is $25,000 minus any PIP payment. Metropolitan also claims Evans's "position taints the arbitrator" and results in prejudice. Resp't's Br. at 5.

---

[6] In Evans's response to Metropolitan's motion contesting arbitrability, she valued her claim against the UIM insurers as between $1 to $50,000. "The fact that [she] believes her damages are up to a total amount of $75,000 does not restrict her claim against the defendant insurance companies." CP at 30-31; see also CP 61.

Evidence Rule 411

Metropolitan argues, "Evidence rule 411 prevents appellants from injecting insurance into the arbitration before damages are determined." Resp't's Br. at 13. Metropolitan relies on ER 411 for the first time on appeal. Generally, an appellate court will not consider issues raised for the first time on appeal. RAP 2.5(a). A party must inform the court of the rules of law it wishes the court to apply and offer the trial court an opportunity to correct any error. Smith v. Shannon, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

At the trial court, Metropolitan relied on ER 401, 403 and 408 but not ER 411.[7] Even so, ER 411 sheds no light on the present dispute. Nor does it provide any support for Metropolitan's assertion.

By its own terms, ER 411 is a limited rule that addresses the admission of liability insurance

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not requires the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

ER 411 addresses the inadmissibility of the existence or absence of liability insurance on the issue of fault except when offered for another purpose. Fault is not at issue in this case.

---

[7] ER 401 defines "relevant evidence." ER 403 deals with the exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. ER 408 deals with compromise and offers to compromise. These evidence rules are not relevant below or on appeal. Because Metropolitan does not argue or rely on these rules on appeal, we treat them as abandoned.

Prejudice

Metropolitan next asserts, "Appellant's position taints the arbitrator and prejudices Metlife by presupposing that Ms. Evans UIM claim is worth more than $25,000 in the first place." Resp't's Br. at 5. Metropolitan cites to no relevant authority that precludes a mandatory arbitration UIM claimant from presenting evidence of his or her total collision damages so long as the arbitrator's final award does not exceed the $50,000 statutory cap.[8,9] Metropolitan's argument confuses two distinct concepts: proof of total damages and the statutory arbitration limit, discussed below.

Mercier v. GEICO

Evans relies on Mercier v. GEICO Indem. Co., 139 Wn. App. 891, 165 P.3d 375 (2007). There, we addressed the same issue presented here—the authority of the arbitrator in a mandatory arbitration proceeding to decide collision damages and issues of setoff and offset.

Mercier sustained injuries in a rear-end collision. The at-fault driver paid Mercier liability policy limits of $25,000. Mercier had an auto insurance policy through GEICO Indemnity Company with limits of $100,000 per person in UIM coverage and $10,000 in PIP coverage.

---

[8] Evans asserts, "To obtain a $50,000 award, Ms. Evans must show damages over $75,000.00 because the respondent UIM carrier is allowed a credit for offset of $25,000.00 for the liability limits obtained against the tortfeasor's liability insurance policy and possibly a credit for PIP payments." Appellant's Br. at 9.

[9] While both parties devote argument to the proper definition of the term "claim" in RCW 7.06.020, we do not view the resolution of that debate as controlling here. Arguably, "the term 'claim' as used in the statute and rules presumably is synonymous with its use under the civil rules (e.g. CR 8)." M. Wayne Blair, Mandatory Arbitration in Washington, in WASHINGTON STATE BAR ASS'N, ALTERNATE DISPUTE RESOLUTION DESKBOOK: ARBITRATION AND MEDIATION IN WASHINGTON §2.3(1)(b)(i) at 2-12 (2d ed. 1995).

GEICO paid Mercier $10,000 for his medical expenses under PIP coverage. Mercier and GEICO disagreed on what amount over $35,000, if any, Mercier was entitled to receive. Mercier sued in King County Superior Court and transferred her case into mandatory arbitration.

GEICO took the position that an arbitrator is limited to deciding the tortfeasor's liability and total damages, leaving resolution of coverage issues and setoff rights to the court. Mercier asserted that there is no such limitation on what the arbitrator can decide. The arbitrator can determine the total collision damages and deduct the setoffs to arrive at an award establishing the net UIM payment owed by the insurer.

The arbitrator concluded that he lacked authority to decide coverage issues including issues of offset and setoff. He therefore precluded evidence of "'UIM insurance limits and underlying limits . . . in the mandatory arbitration ruling.'" Mercier, 139 Wn. App. at 896. He awarded Mercier $36,000, inclusive of medical expenses and income loss. On Mercier's motion to enter judgment for $36,000, the trial court entered a judgment for $1,000 after adopting GEICO's view that the judgment should be reduced by $35,000 to account for PIP medical payments of $10,000 and the tortfeasor's $25,000 liability limits.

On appeal, Mercier contended the trial court erred because the $36,000 award was a net award that resolved the entire controversy and the court lacked authority to supplement the record. GEICO responded that coverage issues, including issues of setoff and offset, are beyond the scope of mandatory arbitration but are specifically reserved for the courts.

In rejecting GEICO's contention, we explained the purpose and scope of the mandatory arbitration statutory framework:

Mandatory arbitration, a statutory system, was designed to take relatively small and simple cases off the superior court's docket and resolve them quickly and inexpensively. . . . Taking over the case on behalf of the court, the arbitrator in a MAR proceeding may "determine all issues raised by the pleadings," including but not limited to a determination of damages. MAR 6.1.

Arbitration applies only to cases "where the sole relief sought is a money judgment. . . ."

The rationale for excluding claims other than for a money judgment is in keeping with the idea that mandatory arbitration is better suited for smaller and simpler claims. Claims seeking remedies other than money judgments are often complex and sometimes require continuing supervision by the court. The arbitration program was not designed for these kind of cases.

Mercier, 139 Wn. App. at 899-900 (footnote omitted) (quoting M. Wayne Blair, Mandatory

Arbitration in Washington, in WASH. STATE BAR ASS'N ALTERNATE DISPUTE RESOLUTION

DESKBOOK: ARBITRATION AND MEDIATION IN WASHINGTON § 2.2(1), at 2-4 (2d ed. 1995)).

After discussing the arbitrator's authority given the mandatory arbitration statute's

purpose and scope, we reasoned:

According to M. Wayne Blair, author of a chapter on chapter 7.06 RCW in a Washington State Bar Association Deskbook, arbitrators who conduct mandatory arbitrations should construe their authority broadly. When issues in the case are left undecided in arbitration, they must be referred back to the court and this undermines the objectives of the system:

The authority of an arbitrator begins at the point the arbitrator is assigned to a case. Under MAR 3.2, the arbitrator has authority to decide all procedural issues, examine any site or object relevant to the case, issue subpoenas, administer oaths, rule on evidence, determine the facts, decide the law, make an award and generally perform acts authorized by the statute and rules.

The rules should be interpreted by the arbitrator as a broad grant of authority. An arbitrator should hesitate before deciding that he or she does not have authority to make a particular ruling or decide a matter. If an arbitrator so determines, then the matter must be referred to the court. Such uncertainty on the part of the arbitrator only adds to the time and expense of resolving a case.

This comment makes sense. Here, [the arbitrator] could have decided the coverage issues after determining the collision damages—just as the superior court would have done if the lawsuit had not gone to mandatory arbitration. We see nothing in RCW 7.06 or the rules that would have prevented the arbitrator from reading the contract, admitting evidence of insurance limits, giving GEICO appropriate credit for

> the payments Mercier had already received, and coming up with a new award upon which the superior court could have entered judgment without further ado.
> Although the arbitrator could have resolved the whole case, he did not.

Mercier, 139 Wn. App. at 900-01 (footnote omitted) (quoting Blair, supra, § 2.3(3)(b) at 2-26.

Metropolitan attempts to distinguish Mercier. It maintains that in Mercier, we treated the entire $36,000 arbitration award as his UIM claim. Metropolitan misconstrues our analysis. On that point, we stated, "what he sought was a money judgment reflecting the bottom line amount (if any) that GEICO was obligated to pay him under underinsured motorist provisions of his insurance contract." Mercier, 139 Wn. App. at 900. In the current case, the bottom line amount Evans seeks from Metropolitan under the UIM policy is $50,000.

Also, the deskbook we relied on in Mercier indicates the statutory damages cap is based on "the final award" plaintiff seeks after applicable offsets:

> Plaintiff has a claim for $70,000 but concedes that plaintiff is 50% negligent so that the final award would not exceed the arbitration limit of $35,000. Is the case subject to arbitration? <u>Because the case involves only a money judgment and the plaintiff is not seeking an amount in excess of the arbitration limit, the case is subject to arbitration. As long as the claimant chooses to limit the award to no more than the jurisdictional limit, the case is subject to arbitration.</u>

Blair, supra, § 2.3(1)(b)(i) at 2-13 (emphasis added).[10]

This approach is sound and consistent with the statutory scheme.[11] In addition, a leading Washington insurance law treatise commenting on Mercier indicates:

---

[10] The deskbook author participated in the drafting of the mandatory arbitration legislation and rules. And numerous Washington courts have cited to this chapter on chapter 7.06 RCW as an authoritative source.

[11] We note that at least two Washington counties have adopted local mandatory arbitration rules that are consistent with our decision in Mercier and the deskbook.

However, when UIM claims are required/allowed to be filed in court, and the matter is thereafter referred to mandatory arbitration, the arbitrator in such an MAR proceeding may "determine all issues raised by the pleadings." In such a setting, the arbitrator is empowered to review the UIM policy, admit evidence of insurance limits, apply the appropriate PIP limits in favor of the UIM insurer, and set the net award. Because MAR proceedings involve smaller cases subject to a jurisdictional limit, the mandatory arbitration rules envision removing relatively small and simple cases from the superior court's docket and having them resolved quickly and inexpensively. Arbitrators who conduct mandatory arbitrations should construe their authority broadly, and attempt to resolve all issues, including the merits, coverage, and crediting, and enter a net award.

THOMAS V. HARRIS, WASHINGTON INSURANCE LAW § 37.02, at 37-10 to 37-11 (3d ed.

2010).[12]

Arbitrator Bias

Metropolitan also argues:

Mercier stands for the proposition that after damages are determined the arbitrator may then consider insurance and offset. Mercier does not stand for the proposition that the arbitrator can restrict Appellants' claim to the "net" award at the outset, and certainly not by disclosing insurance information prior to adjudicating the value of the claim.

Resp't's Br. at 12.

---

Pierce County Local Mandatory Arbitration Rule 1.2 provides, "Matters Subject to Arbitration. The limit for claims subject to mandatory arbitration is $50,000. For the purpose of the rule, a 'claim' is defined to be the net value of the claim, after all reductions for comparative negligence or setoffs; e.g. if the plaintiff's damages are $70,000.00 and the plaintiff is 50% comparatively negligent, the plaintiff's claim is for $35,000.00." Similarly, Clallam County Local Mandatory Arbitration Rule 1.3 also provides "CLAIM LIMIT. The limit for claims subject to mandatory arbitration is $50,000, exclusive of interest, attorney's fees and costs. For the purpose of the rule, a 'claim' is defined to be the net value of the claim, after all reductions for comparative negligence or setoffs; e.g. if the plaintiff's damages are $100,000 and the plaintiff is 50% comparatively negligent, the plaintiff's claim is for $50,000."

[12] Numerous Washington Supreme Court cases have cited to this treatise as an authoritative source. Our Supreme Court recently referred to this definitive work as, "our state's leading insurance law treatise." Nat'l Sur. Corp. v. Immunex Corp., 176 Wn.2d 872 n.2, 297 P.3d 688 (2013).

We are not persuaded by these unsupported claims. <u>Mercier</u> is clear. Nothing in the mandatory arbitration statute, rules, or any other authority "prevented the arbitrator from reading the contract, admitting evidence of insurance limits, giving GEICO appropriate credit for the payments Mercier had already received, and coming up with a <u>net</u> award upon which the superior court could have entered judgment without further ado." <u>Mercier</u>, 139 Wn. App. at 901 (emphasis added). The arbitration will decide the question of the UIM payment due to Evans. The offset and setoff issue goes directly to the amount Metropolitan must pay, if any, in UIM benefits.

To the extent Metropolitan claims the arbitrator's neutrality is compromised by predecision knowledge of the offsets, it relies exclusively on an irrelevant evidence rule— ER 411 discussed above. Metropolitan's argument also speculates that this information will unfairly influence the arbitrator's UIM benefits award. We disagree.

As we noted in <u>Mercier</u>, the arbitrator takes "over the case on behalf of the court . . . ." <u>Mercier</u>, 139 Wn. App. at 899. Arbitration authorized by chapter 7.06 RCW is distinguishable from voluntary, private arbitration authorized by chapter 7.04 RCW, or by the American Arbitration Association, or by other forms of private arbitration. Arbitration under chapter 7.06 RCW, unlike most other forms of arbitration, is not necessarily final or consensual and operates under the authority of the court system. Blair, <u>supra</u>, § 2.2(5) at 2-7. The court selects the panel of arbitrators. Arbitrators must sign the oath of office. Arbitrators are subject to the same grounds for disqualification as judges—interest, relationship, bias, and prejudice—under CJC Canon 3(c);[13] SCLMAR 3.1. Arbitrators are authorized to: decide facts and the law, make an award, decide attorney fees and costs,

---

[13] Former CJC Canon 3(c) (1993) (currently CJC 2.11).

decide procedural issues, invite trial briefs, examine any site or object, issue a subpoena, rule on admissibility of evidence, and grant continuances and other acts authorized under the rules. MAR 3.2. As a quasi-judicial officer acting directly under the auspices of the superior court, we presume the arbitrator will render a fair, impartial decision based on the facts and law.

## CONCLUSION

The trial court erred when it granted Metropolitan's motion contesting the arbitrability of Evans's UIM case. The court improperly transferred the case to the civil trial calendar because it concluded the case was not subject to mandatory arbitration. We adhere to our rationale in Mercier. We also conclude an arbitrator is authorized to determine a UIM claimant's total collision damages, minus the setoff and offset, for a maximum net award not to exceed the statutory limit, here $50,000. We reverse the trial court's order and remand for further proceedings consistent with this opinion.

WE CONCUR:

_Trickey, J_

_Cox, J._

_Leach, J_