**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
12/2/2022
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| SARA MALVERN, a single woman, | No. 83248-4-I |
| Appellant, | |
| | ORDER GRANTING MOTION TO PUBLISH |
| v. | |
| MARK MILLER, and "JANE DOE" Miller, Husband and Wife and the marital community, comprised thereof, | |
| Respondents. | |

Respondent, Mark Miller, has filed a motion to publish. The appellant, Sara Malvern, has filed a joinder. The court has considered the motion, and a majority of the panel has reconsidered its prior determination not to publish the opinion filed for the above entitled matter on October 31, 2022 finding that it is of precedential value and should be published. Now, therefore, it is

ORDERED that the motion to publish is granted; it is further

ORDERED that the written opinion filed October 31, 2022 shall be published and printed in the Washington Appellate Reports.

_____
Judge

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SARA MALVERN, a single woman,<br><br>Appellant,<br><br>v.<br><br>MARK MILLER, and "JANE DOE" Miller, Husband and Wife and the marital community, comprised thereof,<br><br>Respondents. | No. 83248-4-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

BIRK, J. — Sara Malvern appeals a superior court order striking her request for a trial de novo after an arbitrator entered an award against her for failure to appear at the arbitration hearing. Malvern maintains she was unable to connect to the arbitration videoconference meeting due to malfunctioning technology, which, she asserts, amounted to good cause for being absent. Before ruling on the motion to strike her request for a trial de novo, the superior court ordered discovery and held oral argument. The court found that Malvern did not have good cause for her absence from the arbitration hearing and consequently waived her right to a trial de novo.

We hold that the proper standard of review of a trial court's determination of good cause or lack thereof under Superior Court Civil Arbitration Rules (SCCAR) 5.4 is abuse of discretion. Under that standard of review, we hold the superior court did not abuse its discretion when it found that Malvern did not have good

No. 83248-4-I/2

cause for her absence, and we affirm the order striking her request for a trial de novo.

I

Malvern alleges that on June 16, 2015 Mark Miller negligently operated a motor vehicle, striking a vehicle operated by Malvern. She alleges the collision caused physical and nonphysical damages. Malvern filed suit against Miller on June 12, 2018. Discovery was served on Malvern in October 2018. Effective November 16, 2018, Malvern's original attorney withdrew from representation. Malvern proceeded pro se. On January 1, 2019, Malvern failed to appear at a deposition, then, on March 8, 2019 appeared for a deposition but refused to answer questions. In October 2020, the case was transferred to arbitration.

On December 3, 2020, the arbitrator sent a notice for arbitration and letter to both Malvern and Miller's counsel by regular mail. The notice set the arbitration for 9:00 a.m. on February 3, 2021 and included a SCCAR 5.4[1] admonition that "[a] party who fails to participate, without good cause, waives the right to a trial *de novo.*" That notice was not returned to sender. On January 21, 2020, after having heard no response from Malvern, the arbitrator contacted her prior counsel to obtain her phone number and e-mail address. The previously mailed notice and letter were sent to Malvern on that day. On January 27, 2021, the videoconference

---

[1] The outdated notice form cited to Mandatory Arbitration Rules (MAR) 5.4. Effective December 3, 2019, among other changes, the name of the MAR was changed to SCCAR; the changes effected only the name of SCCAR 5.4. Amendments of Rules of Court, 194 Wn. 2d 1107, 1111 (2019) (changing name only of Mandatory Arbitration Rules 5.4). Because it was effective at the time of the hearing, we cite to SCCAR 5.4 in this opinion.

No. 83248-4-I/3

meeting invitation was sent to Malvern, and the arbitrator left Malvern a telephone message on her cell phone stating the need to respond.

At 5:36 p.m. on February 1, 2021, Malvern called the arbitrator on his cell phone to request a postponement of the hearing. The arbitrator explained that she would need to bring her motion to continue at the time of the hearing on February 3, 2021, so that defense counsel could be included. At 5:41 p.m. on the same day, Malvern e-mailed the arbitrator and defense counsel, stating,

> I will not be at the arbitration on 2/3/21. I have located an attorney and need a continuance of this arbitration in order to bring him up to speed. I apologize for the short notice. With all that is going on in the world today, it seems that I have had to bear the worst of it. This is truly of the utmost importance to me and I hope we find resolution as soon as possible now having both parties represented. Thank you.

The arbitrator responded to Malvern at 5:59 p.m. stating, "You will need to attend the scheduled hearing and make the request for continuance at that time." At 8:41 a.m. the following morning, February 2, the arbitrator e-mailed Malvern again with defense counsel also included, stating, "As I explained to you when you called after 5 pm [y]esterday, you must attend the hearing on February 3 as scheduled. At that time, you may request a postponement in the hearing."

Malvern did not appear at the hearing on February 3, 2021, at 9:00 a.m. The arbitrator waited 15 minutes before starting the hearing. Defense counsel moved for a defense award based upon noncooperation. The arbitrator "explained to [defense counsel] that while I had planned to continue the hearing had plaintiff appeared as directed, the failure to cooperate made his motion proper for entry [of judgment]." The arbitrator sent his ruling to the Snohomish County Superior Court

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83248-4-I/4

Arbitration Department, and mailed copies to the parties and the clerk at 12:16 p.m., three hours after the hearing. The arbitration award was filed by the Snohomish County clerk on February 5, 2021.

On February 23, 2021, attorney William Budigan filed a notice of appearance on behalf of Malvern. Budigan contacted Miller's attorney and the arbitrator to request that the award be vacated and the matter reopened. The arbitrator stated that he believed he had no authority to vacate the award.

On February 23, 2021, Malvern filed a motion to set aside the default judgment, vacate the arbitration award, and reassign the matter to the arbitration department. On February 24, 2021, Malvern filed a request for trial de novo and to seal the award. Miller filed a motion to strike Malvern's request for a trial de novo.

The superior court ordered a continuance of Malvern's motion to vacate the judgment on arbitration to allow discovery. Discovery was conducted, including interrogatories and requests for production, filing additional declarations, and Malvern appeared for another deposition on June 14, 2021. The superior court heard the motions on September 10, 2021. On September 15, 2021, the superior court issued an order granting Miller's motion to strike Malvern's request for trial de novo and dismissing the case with prejudice.

II

The parties disagree on the proper standard of review of a finding of "good cause" or lack thereof under SCCAR 5.4, an issue of first impression. Under

4

No. 83248-4-I/5

SCCAR 5.4, a party who "fails to participate" in an arbitration without "good cause" waives the right to a trial de novo. A determination of good cause under SCCAR 5.4 is analogous to a trial court's discretionary determination of whether a party may be entitled to a jury trial in cases after the party has procedurally waived the right to jury trial under CR 38. Accordingly, we hold the standard of review of a determination of "good cause" or lack thereof under SCCAR 5.4 is abuse of discretion.

The right to a jury trial in a civil action arises under article I, section 21 of the Washington State Constitution. An appellate court reviews a trial court's decision to deny a jury demand after a previous waiver for abuse of discretion. Stempel v. Oregon Life Ins. Co., 157 Wash. 678, 679-80, 290 P. 222 (1930) (trial court's decision to deny motion for jury trial upheld when plaintiff disputed whether he had notice of the date of trial and did not demand jury trial until four days before date set for trial); Saldivar v. Momah, 145 Wn. App. 365, 391-92, 186 P.3d 1117 (2008) (plaintiffs did not serve a CR 38(d) jury demand prior to the deadline, trial court's order striking jury demand affirmed); Mount Vernon Dodge, Inc. v. Seattle-First Nat'l Bank, 18 Wn. App. 569, 581, 570 P.2d 702 (1977) (right to jury trial was deemed waived when plaintiff did not pay the required jury fee and did not demand a jury until after the case had been set for trial; right was not revived when the trial was struck and later renoted).

The failure to appear at an arbitration hearing without good cause constitutes a waiver of the right to a trial by jury under SCCAR 5.4. Westberg v.

5

No. 83248-4-I/6

All-Purpose Structures, Inc., 86 Wn. App. 405, 412-13, 936 P.2d 1175 (1997). Consistent with authority interpreting CR 38, we hold the trial court has discretion to determine whether a failure to appear is supported by good cause under SCCAR 5.4. Our conclusion that the trial court has discretion to determine that a party may be entitled to a trial de novo despite an earlier failure to appear comports with the principle that, under the Washington constitution, "the right to a jury trial is a valuable constitutional right, and its waiver must be strictly construed." Wilson v. Horsley, 137 Wn.2d 500, 511, 974 P.2d 316 (1999). We review the trial court's determination that Malvern lacked good cause to be absent from the arbitration hearing under SCCAR 5.4 for abuse of discretion.

III

A court abuses its discretion when a decision is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). A discretionary decision rests on "untenable grounds" or is based on "untenable reasons" if the trial court relies on unsupported facts or applies the wrong legal standard; the court's decision is "manifestly unreasonable" if the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take. Id. The superior court did not abuse its discretion when it found Malvern did not have good cause to be absent from the arbitration hearing on February 3, 2021.

6

No. 83248-4-I/7

A

The superior court based its decision on facts supported by the record developed through the discovery the court required before deciding the merits:

> . . . SCCAR 5.4 provides a mechanism for a party who has emergent circumstances on the day of the hearing causing them not to appear to contact the arbitrator after the hearing and explain the circumstances and the arbitrator can then open the proceeding back up and allow the absent party to appear. Plaintiff not only did not appear or contact the arbitrator at the time of the hearing, but also did not contact the arbitrator later that day or any time the next two days when that would have allowed the arbitrator to open the proceedings and hear Plaintiff's evidence before the arbitration decision. No good reason or good cause was shown for the continuing failure to contact, and Plaintiff was bound to know the rules the same as an attorney. In addition, Plaintiff's claims she could not contact the arbitrator by any means are not credible given her contact in the days before the hearing and the fact she could have, but made no attempt to contact after the hearing.

The evidence presented to the superior court included two declarations by Malvern, filed on February 23, 2021 and March 31, 2021, and testimony from Malvern in the June 14, 2021 deposition. In this testimony, Malvern admits receiving notice of the videoconference arbitration hearing in December 2020, a month before the hearing. Malvern asserts general discomfort with technology and admits knowledge of intermittent internet and cellular service at her home. She offers a variety of, at times, conflicting reasons for her inability to connect to the videoconference hearing on the morning of February 3, 2021. Additionally, Malvern stated she did not speak with a lawyer in December 2020 because "it wasn't high on my priority list." Malvern did not attempt to secure the help of a lawyer until February 1, 2021, two days before the hearing. Malvern admits she did not make any attempt to contact the arbitrator prior to February 1, 2021.

7

No. 83248-4-I/8

Despite knowing that she had connectivity issues for both internet and cellular service at her home, Malvern did not prepare ahead of time to avoid the impact of those issues on the morning of the hearing. She provides conflicting information about attempts made to communicate by cell phone on the morning of the arbitration. When asked why she did not attempt to make any phone calls later that evening when she knew she had service, Malvern responded, "Because I figured he either continued it or . . . he made a ruling, so it was pointless." When asked if she attempted to send an e-mail on the evening of February 3rd, Malvern stated, "No. Because I figured he'd already made his ruling or continued it, and so my attorney would then step in."

In light of Malvern's failure to take steps to address known deficiencies in her connectivity, her failure to communicate with the arbitrator and the opposing party despite her demonstrated ability to do so, and the inconsistencies in her explanations, the superior court did not abuse its discretion in determining Malvern lacked good cause when she failed to appear at the arbitration hearing.

B

Malvern is correct, however, when she notes that the trial court was technically incorrect in suggesting that the arbitrator would have had the ability to reopen the hearing after making an award. The arbitrator's decision was e-mailed to the parties on February 3rd at 12:16 p.m. and filed on February 5th at 1:29 p.m. The trial court ruling refers to a two day period during which Malvern took no action, and it is apparently referring to the two days *after* the award was e-mailed and

8

No. 83248-4-I/9

*before* the award was filed. The arbitrator's authority was not this broad. Although the trial court's order did not correctly describe the relief that would have been available to Malvern after the award was made, Malvern's lack of communication nevertheless supports the trial court's conclusion that she lacked good cause for her failure to appear.

"The authority of an arbitrator begins at the point the arbitrator is assigned to a case." Evans v. Mearcado, 184 Wn. App. 502, 513, 338 P.3d 285 (2014) (quoting Mercier v. GEICO Indem. Co., 136 Wn. App. 891, 900-901, 165 P.3d 375 (2007)). Case law does not clearly define when the arbitrator's authority ends. According to Washington Practice, "[t]he rules do not clearly specify the point at which the arbitrator's authority terminates. Implicitly, once the award has been filed and served in accordance with SCCAR 6.2 . . . , the arbitrator no longer has any authority in the case." 15A DOUGLAS J. ENDE, WASHINGTON PRACTICE: WASHINGTON HANDBOOK ON CIVIL PROCEDURE § 77.10, at 716 (2021-2022 ed. 2021). Under SCCAR 6.2, the arbitrator had up to 14 days after the hearing in which to file an award. And under SCCAR 5.4, the arbitrator had the authority to allow an absent party to appear at a "subsequent hearing" for good cause, but only "before making an award." As Washington Practice notes about an arbitrator's authority after issuing an award, "[p]lainly, however, an arbitrator retains authority to issue an amended award if warranted. That circumstance is limited to correction of 'an obvious error' if done within the time for filing of the award or by order of the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83248-4-I/10

superior court" under SCCAR 6.2. 15A WASHINGTON PRACTICE, supra, at 716 (quoting SCCAR 6.2).

The superior court's order suggests that Malvern had an avenue to obtain a "subsequent hearing" under SCCAR 5.4, but Malvern correctly notes that avenue was closed when the arbitrator issued an award. This underscores, however, the significance of Malvern's failure to communicate with the arbitrator and the opposing party. If Malvern had timely informed the arbitrator of her inability to join the videoconference arbitration hearing by some means—such as the e-mail account she had used to contact the arbitrator only two days before—the arbitrator could have used the authority under SCCAR 5.4 to delay entry of an award and allow a "subsequent hearing." Malvern's lack of communication at the time of the arbitration and immediately after is supportive of the trial court's determination that Malvern lacked good cause.

The arbitrator was not required to postpone the hearing based on Malvern's e-mail request on February 1st, nor to delay entry of an award after she failed to appear. Snohomish County Superior Court Civil Arbitration Rule 3.2 provides, "In addition to the authority conferred on arbitrators under SCCAR 3.2, an arbitrator has the authority to "[d]etermine the time, place and procedure to present a motion before the arbitrator." The arbitrator acted within his authority in making the award when he did, even though his doing so foreclosed allowing a subsequent hearing under SCCAR 5.4.

10

No. 83248-4-I/11

C

Our decision that the arbitrator lacked authority to allow a subsequent hearing after making an award does not mean, however, that Malvern had no relief available to her. Separately from authorizing the arbitrator to allow a subsequent hearing before making an award, SCCAR 5.4 permits a trial court to find that a party has waived the right to a trial de novo by failing to appear only when the superior court concludes the party lacked good cause for the failure. The good cause standard provides an avenue for relief in superior court, even after the arbitrator has made an award and can no longer allow a subsequent arbitration hearing under SCCAR 5.4. This protects parties who can demonstrate a credible explanation for a failure to appear at an arbitration hearing even after an adverse award is made against them based on nonparticipation.

This interpretation of SCCAR 5.4 answers Malvern's argument that the rule violates procedural due process. Procedural due process entitles a party to notice and opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 332-33, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950). Here, "[t]he rules of mandatory arbitration preserve the right of appeal to a court for a jury trial *if the right is not waived*." Westberg 86 Wn. App. at 412-13. "The right to a jury trial may be waived by inaction." Id. at 413. In Westberg, the court held that the defendant waived his right to a trial de novo when he failed to participate in an arbitration hearing without good cause. Id. In both Westberg and the present case, the waiving party was

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83248-4-I/12

afforded the right to a superior court hearing to determine whether a failure to appear at an arbitration hearing was supported by good cause. This satisfies the due process requirements of notice and opportunity to be heard. As we interpret SCCAR 5.4, in cases of failure to appear, the rule permits arbitrators to allow a subsequent arbitration hearing before an award is made, and it permits the superior court to allow a trial de novo after an award is made, in both cases based on a good cause standard. This provides procedural due process.

IV

Because the superior court acted within its discretion in determining that Malvern lacked good cause for failing to appear at the arbitration hearing, and because Malvern was afforded the opportunity to show good cause to avoid a conclusion of waiver, we affirm the order striking her request for a trial de novo and dismissing the action with prejudice.

_Birk, J._

WE CONCUR:

_Bruman, J_        _Andrus, C.J._

12