IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DARRELL RISTE, TYLER RISTE, and CATHY RISTE, | ) ) ) | No. 35681-7-III |
| Appellants, | ) ) | |
| v. | ) ) | |
| THE PERSONAL REPRESENTATIVE OF THE ESTATE OF DAN McANALLY, THE TRUSTEE OF THE RISTE TRUST, BAKER BOYER BANK, VICE PRESIDENT OF BAKER BOYER BANK, ALAN M. DILLMAN, VELIKANJE, MOORE & SHORE, ATTORNEYS AT LAW, STOKES LAWRENCE, VELIKANJE MOORE & SHORE, STOKES LAWRENCE, P.S., GEORGE VELIKANJE, and DOES 1-30, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) | |

LAWRENCE-BERREY, C.J. — Darrell Riste, Cathy Riste, and Tyler Riste appeal the summary judgment dismissal of their claims against numerous defendants. The claims arise out of the probate of Dan McAnally's estate. This is the third time we have considered similar arguments. We affirm the trial court's summary judgment dismissal of the Ristes' latest claims and award attorney fee sanctions against the Ristes and their attorney for a frivolous appeal.

No. 35681-7-III
*Riste v. Estate of Dan McAnally*

## FACTS[1]

This is the third appeal arising from the probate of Dan McAnally's estate (the Estate) after he died testate on September 22, 2012. *Estate of McAnally*, No. 35054-1-III; *see also Riste*, No. 35821-6-III. The Estate consisted of a personal residence, tangible personal property, bank accounts, and—the major subject of litigation below and the multiple appeals to this court—commercial property in Selah, Washington, known as the Viking Village Shopping Center (hereinafter Viking Village). *Estate of McAnally*, No. 35054-1-III, slip op. at 1.

After Mr. McAnally died, his will was admitted to probate, Baker Boyer Bank was appointed personal representative (PR), bond was waived, and nonintervention powers were granted. *Riste*, No. 35821-6-III, slip op. at 4. The will directed the PR to pay, from the residue of the Estate, all costs and taxes payable because of McAnally's death. *Estate of McAnally*, No. 35054-1-III, slip op. at 2. It directed the remaining residue to go into a testamentary trust (the Riste Trust) for the benefit of Darrell Riste. *Id.*

---

[1] Many of the facts are taken from this court's recent opinions in *In re Estate of McAnally*, No. 35054-1-III (Wash. Ct. App. May 3, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/350541_unp.pdf, and *Riste v. Idaho Law Group LLP*, No. 35821-6-III, (Wash. Ct. App. Mar. 19, 2019) (unpublished) http://www.courts.wa.gov/opinions/pdf/358216_unp.pdf.

On February 25, 2014, the PR filed a "Petition for Order Determining Amount of Pecuniary Requests." *Riste*, No. 35821-6-III, slip op. at 4. The PR provided notice to Darrell Riste, and he executed a receipt acknowledging he had received his distributive share. *Id.* On June 5, 2014, the PR then filed a "Petition for Order for Authorizing Sale of Real Estate Property," which entailed Viking Village. *Id.*

An appraisal valued Viking Village at $1,700,000 at the time of Mr. McAnally's death. *Estate of McAnally*, No. 35054-1-III, slip op. at 4. The PR received an offer of $1,451,000, subject to an environmental assessment. *Id.* The Ristes demanded not to sell Viking Village. *Id.* The PR relayed several concerns it had of the risks associated with keeping Viking Village as a trust asset. *Id.* It then petitioned the court to approve the conditional sale. *Id.* The PR informed the court of the contentious relationship that had developed between the PR and the Ristes. *Id.* A hearing was held on July 8, 2014, in which notice was provided to the Ristes, but counsel for the Ristes did not object to the sale. *Id.* Thus, the court authorized the sale of Viking Village. *Id.*

The environmental assessment on Viking Village revealed the property had severe soil contamination, and the buyer withdrew its offer. *Id.* at 4-5. On January 15, 2014,[2] a new appraisal, with the soil contamination noted, valued Viking Village at $1,100,000.

---

[2] We believe our last opinion misstated the date, which should be January 15,

3

*Id.* at 5. A new buyer made an offer of $1,100,000. *Id.* Although unnecessary, on March 20, 2015, the Ristes authorized the PR to sell Viking Village. *Id.* After this, there was no court action on this case for a period of time. *Riste*, No. 35821-6-III, slip op. at 5.

On September 6, 2016, the Ristes hired new counsel, the Idaho Law Group, and filed a "Notice of Motion and Motion to Recuse Judge Hahn; to Remove the Personal Representative of the Estate of Dan McAnally and the Trustee of the Riste Trust for Conflict of Interest and Breach of Fiduciary Duties; For and [sic] Order Requiring the Personal Representative to File and [sic] Accounting; Denial of Fiduciary and Attorney's Fees; and for Pendente Lite Orders Freezing Assets and Appointing a Successor Fiduciary." *Id.* The Ristes generally claimed that the PR and its attorneys violated fiduciary duties owed to them and that the PR should be removed. *Riste*, No. 35821-6-III, slip op. at 3. We will refer to this matter as the "Probate Matter."

On November 18, 2016, a Yakima County court commissioner heard argument on the Probate Matter. *Estate of McAnally*, No. 35054-1-III, slip op. at 7. The commissioner rejected the Ristes' arguments, approved the final accounting of the Estate, and granted the PR's request to close the Estate. *Id.* The commissioner signed the PR's proposed findings and conclusions. *Id.*

---

2015, based on the timeline of events.

Because collateral estoppel was the basis for the trial court's dismissal on

summary judgment in this current appeal, we quote extensively from the commissioner's

findings and conclusions in its letter decision in the Probate Matter:

> Issue #1—Sale of Shopping Center
>
> Many of Mr. Riste's objections concern the sale of the Shopping Center.
> Mr. Riste wanted the Estate/Trust to retain the Shopping Center as he
> believed it would produce more annual income than a liquid financial
> investment and he was to personally receive the annual income from the
> Trust. The P.R. sought to sell the Shopping Center in order to have a more
> diverse trust estate. This was the subject of much discussion between the
> parties. The P.R. petitioned the court for authority to sell the Shopping
> Center. No one filed any objections, apparently no one objected at the
> hearing and the Court (Judge Hahn) authorized the sale. There was no
> Motion for Reconsideration. Now, 26 months after the Order Authorizing
> Sale was entered, Mr. Riste's [sic] makes objections. His objections are
> untimely.
>
> Mr. Riste's opportunity to object to the sale, or to object to the conduct of
> the P.R. relating to the sale, was in July 2014. If Mr. Riste felt that he did
> not have enough information to form an objection, he could, at a minimum,
> have sought a continuance. Mr. Riste ultimately agreed to have it sold at
> $1,100,000.00.
>
> Mr. Riste challenges the validity of the Trust. He maintains that no will can
> create a trust, but that all trusts must be created by a document separate
> from the will. He cites RCW 11.25.250. His reliance is misplaced. "There
> are four elements required to create a testamentary trust: (1) a will
> evidencing testamentary intent to create a trust, (2) designation of the trust
> corpus, (3) designation of beneficiaries, and (4) specification of the terms of
> the trust." All of these elements are present in Decedent's Will, so the Trust
> is valid.

Mr. Riste also challenges the P.R.'s right to sell the property by citing RCW 11.04.250. Mr. Riste's interpretation is too narrow and is rejected by RCW 11.68.090 which gives a personal representative with non-intervention power to sell real property without court approval.

The P.R. had non-intervention powers. The Shopping Center was not a specific devise. Instead, it passed through the general residual clause of the Will. Thus, the P.R. had the authority to sell the asset. The Trust does not fail because it is a testamentary trust and no separate document is needed. The P.R. gave notice of the hearing. The P.R. provided a rational basis for the sale in that it wanted to diversify the Trust estate. The P.R. obtained an appraisal to determine the value of the property. There were no objections. There was no violation of any fiduciary duty. There was no conflict of interest.

Issue #2—TEDRA Matter Regarding "Funds on Deposit"

Mr. Riste's [sic] objects to the P.R.'s "Petition for Order Re Bequests" on the grounds that it was unnecessary and, thus, incurred unnecessary fees. There was $442,499.97 in a money market account at Baker Boyer Bank upon Decedent's death. The Will had several specific bequests. Two of these bequests were similar in nature in that Darrel Riste and Fred Wickholm were each to receive 30% of "all bank accounts and other bank deposits standing in my name at the time of my death" with the remaining 40% being a part of the residual estate. This meant that if the money market accounts were "bank deposits," $265,499.98 would pass as specific bequests. If the money market accounts were not "bank deposits," the $265,499.98 would pass to the residual estate which was the Trust. Darrell Riste's grandchildren, Kyler Riste and Gracie Riste, hold remainder interests in the Trust. Because they are minors, a Guardian ad Litem was appointed for them. University of Denver is a contingent remainder beneficiary of the Trust. Not surprisingly, Fred Wickholm and Darrell Riste did not object to the P.R. classifying the money market accounts as bank deposits.

6

It was neither frivolous nor a breach of fiduciary duty for the P.R. to seek to prevent any future litigation by asking the Court to review this issue. The P.R.'s action brought stability to both the Estate and Trust by foreclosing any possible future claim that the money market accounts were not bank deposits.

Issue #3—Information Flow

Mr. Riste sought the P.R.'s removal and sought to have the P.R. (and its agents) not be paid as Mr. Riste claimed the P.R. (or its agents) breached its fiduciary duty by providing false or misleading information, or by simply not providing any information at all.

There is no credible evidence in the record that the P.R. or its agents provided false or misleading information. It does appear, however, that Mr. Riste did not receive all of the information he requested.

An heir's right to information from a personal representative in a non-intervention estate is limited. It is not a breach of a fiduciary duty if a personal representative in a non-intervention estate does not provide heirs with financial information, estate records, valuation of the estate, and information relating to estate property during probate unless ordered to do so by the Court. Mr. Riste requested information pursuant to RCW 11.76.010. However, that section is not applicable in non-intervention estates. Mr. Riste never sought a court order via RCW 11.68.065 which would have then compelled the P.R. to provide timely information.

Mr. Riste asked, in writing, for a copy of the Inventory and Appraisement at least three times with the earliest request on or about February 7, 2013. A copy was provided to him on May 6, 2014. The statute required that the Inventory and Appraisement be completed by December 5, 2012, and that a copy be given to any heir within 10 days of the personal representative's receipt of the request. There is no explanation why the P.R. waited approximately 15 months to respond to Mr. Riste's request. The issue before this court is whether this delay rises to the level of being deemed a breach of fiduciary duty.

The statute makes failures such as this a basis to revoke letters testamentary and imposition of terms against the personal representative. However, this is discretionary. When I weigh this failure against several factors, I find that it does not rise to the level of a breach of fiduciary duty. These factors are: the P.R. did finally provide Mr. Riste with a copy, Mr. Riste never sought Court action against the P.R. pursuant to RCW 11.44.050, Mr. Riste did not object to the late delivery to the Court until months after the fact, Mr. Riste did not challenge the validity of the information contained in the Inventory and Appraisement and Mr. Riste did not show that the late delivery harmed him.

In his Petition #1, Mr. Riste provided copies of letters and emails. These show that the P.R. and/or its attorney responded to most of Mr. Riste's inquiries although the level of detail and [sic] may not have been as great as Mr. Riste expected. Additionally, as of July 2, 2014, the P.R. arranged for Mr. Riste to have electronic access to the monthly statement concerning the financial accounts managed by the Trustee.

Issue #4—Professional Fees

Mr. Riste objected to the payment of professional fees to the P.R. and its attorney based upon alleged breach of fiduciary duties and reasonableness. Having found no breach of fiduciary duty, I focus on the reasonableness of the fees.

A personal representative and its attorney are entitled to be compensated. "In fixing the amount of such fee, the court is to consider: the amount and nature of the services rendered, the time required in performing them, the diligence with which they have been executed, the value of the estate, the novelty and difficulty of the legal questions involved, the skill and training required in handling them, the good faith in which the various legal steps in connection with the administration were taken, and all other matters which would aid the court in arriving at a fair and just allowance."

Mr. Velikanje provided a fee affidavit which showed the activity, time, and fee for each entry. Mr. Riste provided no specific objection or contrary evidence. I have reviewed the time/fee entries against the factors listed above and find the attorneys' fees and costs to be reasonable. Of note is that the estate was inventoried at $2,642,936 and that it involved the sale of commercial property that had issues of environmental contamination.

The P.R. charged a fee according to its published fee schedule. Mr. Riste provided no specific objection or contrary evidence. The Estate Fee Schedule is reasonable.

Clerk's Papers (CP) at 670-73 (footnotes omitted); *see also Riste*, No. 35821-6-III, slip op. at 6-10. Furthermore, the commissioner entered and incorporated the following findings:

12. The Personal Representative paid itself fees in accordance with its published fee schedule. Those fees through the end of the calendar year 2016 total $96,800.74. Those fees are reasonable and were incurred for the benefit of Decedent's estate.

13. The Personal Representative paid its counsel Stokes Lawrence Velikanje Moore & Shore fees through October 31, 2016, in the amount of $117,703.79. Which fees the court finds to be reasonable and were incurred for the benefit of Decedent's estate.

14. Paul M. Larson of Larson Berg & Perkins was appointed the Guardian ad Litem for the minor grandchildren of Darrell Riste. Fees have been paid to the Guardian ad Litem in the amount of $1,787.50, which fees are reasonable and are approved.

15. The Personal Representative paid accounting fees to Alegria & Company in the amount of $1,240.00 for the preparation of the Decedent's final federal income tax return and to Thompson & Kreitzberg and its successor, TKCPA, in the amount of $8,610.00 for the preparation of the estate's federal fiduciary income tax returns which fees are reasonable and are approved.

9

16. The Personal Representative paid Davis Appraisal Service fees in the amount of $6,500 for the appraisal of the estate's commercial real estate which fees are reasonable and are approved.

. . . .

19. The testamentary trust ("Riste Trust") created in Decedent's Will is a valid trust under the laws of the State of Washington.

. . . .

23. Decedent's Will did not contain any provision prohibiting or restricting the right of the Personal Representative to sell the Viking Village Shopping Center.

24. The Personal Representative did not commingle its assets with the assets of Decedent's estate and did not improperly commingle assets of Decedent's estate with the assets of the Riste Trust.

25. The Personal Representative did not violate any of its fiduciary duties or responsibilities.

26. Counsel for the Personal Representative did not violate any of its fiduciary duties or responsibilities.

CP at 655-57.

The Ristes appealed the Probate Matter to this court and challenged many of the commissioner's findings and conclusions. In an unpublished decision, we affirmed the dismissal on all matters. *Estate of McAnally*, No. 35054-1-III.

On May 4, 2017, the Ristes then sued their former attorneys—the Idaho Law Group—for pecuniary damages resulting from malpractice, breach of contract, breach of fiduciary duties, fraud, and for violating the Consumer Protection Act (CPA), chapter 19.86 RCW. *Riste*, 35821-6-III, slip op. at 2. The Idaho Law Group filed a motion to

dismiss. *Id.* at 2-3. The trial court dismissed the Ristes' claims on summary judgment, ultimately finding them barred by collateral estoppel. *Id.* at 6, 11-12.

In an unpublished decision, we affirmed the trial court, finding the Ristes' claims were barred by collateral estoppel and summary judgment was appropriate because the Ristes did not present survivable claims of legal malpractice, breach of fiduciary duty, breach of contract, and CPA violations. *Id.* at 12-18. We awarded the Idaho Law Group attorney fees for defending a frivolous appeal. *Id.* at 18-19.

In this appeal, the Ristes sued numerous defendants including the PR, Baker Boyer Bank, the Vice President of Baker Boyer Bank, Alan Dillman (collectively the Bank), and its attorneys George Velikanje, Stokes Lawrence Velikanje Moore & Shore, and Stokes Lawrence, P.S. (collectively Stokes Lawrence). This is referred to here, and in our former opinion, as the "Fiduciary Matter." *Riste*, No. 35821-6-III, slip op. at 3. The Ristes pleaded claims of breach of contract, breach of fiduciary duty, legal malpractice, negligence, gross negligence, fraud, collusion, unjust enrichment, and CPA violations.

The Ristes' complaint, as best we can discern, claims: breach of contract for negligent and fraudulent drafting of the McAnally will and the Riste Trust, breach of fiduciary duties, collusion, and unjust enrichment through the sale of Viking Village and the amount of attorney and fiduciary fees paid to the Bank and Stokes Lawrence, legal

11

malpractice for actions relating to the sale of Viking Village and the disposition of the

Estate, fraud for the sale of Viking Village and the fraudulent creation of the McAnally

will and the Riste Trust, CPA violations during the dissolution of the Estate, and

negligence and gross negligence on behalf of the Bank and Stokes Lawrence.[3]

The Bank and Stokes Lawrence responded to the Ristes' complaint with motions

for summary judgment.  They argued that the Ristes' claims were barred by collateral

estoppel because the Ristes already asserted and litigated the same claims and allegations

in the Probate Matter.  Alternatively, Stokes Lawrence argued that the Ristes' claim for

legal malpractice must be dismissed because, as attorney for the PR, Stokes Lawrence did

not owe a duty of care to the Ristes as beneficiaries.  The Ristes opposed the Bank's and

Stokes Lawrence's motions for summary judgment and argued that collateral estoppel

was improper because the Probate Matter did not consider all of the claims asserted, the

issues were not identical, Cathy Riste and Tyler Riste were not a party to the Probate

Matter, and collateral estoppel would work an injustice against the Ristes.

On October 27, 2017, the trial court heard argument on the Bank's and Stokes

Lawrence's motions for summary judgment.  On November 6, 2017, the trial court issued

---

[3] The Ristes asserted the negligence and gross negligence causes of action with no argument or explanation on how they apply.

a letter decision finding the Ristes' claims were identical to the claims in the Probate

Matter and were barred by issue preclusion, and the Ristes' claim of legal malpractice

against Stokes Lawrence was barred as a matter of law. The trial court filed an amended

order that incorporated its letter decision and dismissed all of the Ristes' claims with

prejudice.

The Ristes timely appealed.

ANALYSIS

SUMMARY JUDGMENT

The Ristes contend the trial court erred by granting summary judgment in favor of

the Bank and Stokes Lawrence.

We review a summary judgment order de novo, considering the evidence and

reasonable inferences from the evidence in the light most favorable to the nonmoving

party. *Keck v. Collins*, 181 Wn. App. 67, 78-79, 325 P.3d 306 (2014), *aff'd*, 184 Wn.2d

358, 357 P.3d 1080 (2015). Summary judgment is proper when the records on file with

the trial court show there is no genuine issue of material fact and the moving party is

entitled to a judgment as a matter of law. *Id.*; CR 56(c). Initially, the burden is on the

party moving for summary judgment to prove by uncontroverted facts that there is no

genuine issue of material fact. *Seattle Police Officers Guild v. City of Seattle*, 151 Wn.2d

823, 848, 92 P.3d 243 (2004). Once the moving party meets this burden, the burden shifts

to the nonmoving party to set forth specific facts showing a genuine issue of material fact

exists warranting a trial. CR 56(e); *Heath v. Uraga*, 106 Wn. App. 506, 513, 24 P.3d 413

(2001). This court "may affirm summary judgment on any grounds supported by the

record." *Blue Diamond Grp., Inc. v. KB Seattle 1, Inc.*, 163 Wn. App. 449, 453, 266 P.3d

881 (2011).[4]

Claims Dismissed on Collateral Estoppel

The Ristes contend that the trial court erred by concluding that their claims were

collaterally estopped by the Probate Matter. We disagree.

First, the Ristes initially argue for this court to remand the case because the trial

court did not enter adequate findings in its order of dismissal on summary judgment.

"Findings of fact and conclusions of law are inappropriate on summary judgment." *Kries*

*v. WA-SPOK Primary Care, LLC*, 190 Wn. App. 98, 117, 362 P.3d 974 (2015). Even if

the trial court entered findings, we would not consider them. *Id.*; *see also Chelan County*

---

[4] The Bank and Stokes Lawrence assert this court should affirm summary judgment because the Ristes cannot collaterally attack a closed estate. *See* Resp't's Br. at 16-17. The record does not support this argument. The Ristes filed their complaint on September 6, 2016. The Estate closed after the November 18, 2016 hearing. *See Estate of McAnally*, No. 35054-1-III, slip op. at 7.

*Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wn.2d 282, 294 n.6, 745 P.2d 1 (1987).

We reject the Ristes' initial argument.

"Whether collateral estoppel applies to bar relitigation of an issue is reviewed de novo." *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). Collateral estoppel prevents a second litigation of an issue even though a different claim or cause of action is asserted. *Id.* at 306. The doctrine promotes judicial economy and serves to prevent inconvenience or harassment of parties. *Id.*

Collateral estoppel may be applied to preclude only those issues that have been actually litigated and necessarily and finally determined in the earlier proceeding. *Id.* at 307. The party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Id.*

The party asserting collateral estoppel must show (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was the party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied. *Id.*

The Ristes have previously litigated a majority of the issues raised. The first issue related to the sale of Viking Village. The commissioner found the PR had nonintervention powers, it had the authority to sell Viking Village, and the Ristes approved the sale. The second issue related to the PR's and its attorneys' performance of their duties when closing the Estate. The commissioner found the PR and its attorneys did not violate a fiduciary duty or have a conflict of interest in selling Viking Village; it was for the proper purpose to diversify the Estate, and the trust and will, as written, were valid under Washington law. Third, the Ristes challenged the PR's and its attorney fees and expenses as being unreasonable, a conflict of interest, and a violation of a fiduciary duty. The commissioner held that the PR's fees were reasonable, the PR's attorney fees were necessary and reasonable, and the accounting and appraisal fees the PR paid were reasonable and approved. The commissioner further found the PR and its attorneys did not violate any fiduciary duty or responsibility. The Ristes litigated these issues fully. With respect to these issues now, collateral estoppel bars their relitigation.

*The Ristes raised identical issues in the Probate Matter and this matter*

In this appeal, the Ristes raise identical issues that were litigated and necessarily decided in the Probate Matter. Although the Ristes assert new claims or causes of action, the Ristes raise identical issues that were litigated and necessarily decided in the Probate

Matter. Collateral estoppel prevents relitigation of an issue even though a different claim or cause of action is asserted. *Christensen*, 152 Wn.2d at 306.

The Ristes challenge the sale of Viking Village, allege a breach of fiduciary duties as to the PR and its attorneys, and challenge the reasonableness of the PR's and its attorney fees as a breach of fiduciary duty, fraud, embezzlement, and collusion. The sale of Viking Village, the PR and its attorneys' actions, and the PR and its attorney fees were issues that were litigated and decided in the Probate Matter.

*The Probate Matter ended in a final judgment on the merits*

We have found the Probate Matter ended in a final judgment on the merits, and we find it again here. *See Riste*, No. 35821-6-III, slip op. at 14. The Ristes do not challenge this. The second element of collateral estoppel is satisfied.

*The Ristes were a party to the Probate Matter*

The Ristes contend Cathy and Tyler Riste were not a party to the Probate Matter; thus, collateral estoppel cannot be used against them. However, as we have previously found, "all three of the Ristes participated in the litigation. Although Mr. Riste was the only family member who actively participated, the other two family members were represented by counsel and had a right to participate." *Riste*, 35821-6-III, slip op. at 14.

17

We do not change that holding here. Because all three Ristes were a party to the Probate Matter, and all are parties here, the third element of collateral estoppel is satisfied.

*Application of collateral estoppel will not work an injustice against the Ristes*

Collateral estoppel does not work an injustice against the Ristes. The "injustice element" of collateral estoppel "is rooted in procedural unfairness. 'Washington courts look to whether the parties to the earlier proceeding received a full and fair hearing on the issue in question.'" *Schibel v. Eymann*, 189 Wn.2d 93, 102, 399 P.3d 1129 (2017) (internal quotation marks omitted) (quoting *Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 795-96, 982 P.2d 601 (1999)). The Ristes were heard during the Probate Matter and had a full and fair opportunity to litigate. Their attorneys filed extensive motions and documents. They argued at the trial court and on appeal, twice. Collateral estoppel bars the Ristes' attempt to relitigate the same issues.

*Fraud*

The Ristes make allegations of fraud that the Bank and Stokes Lawrence: fraudulently induced the creation of the McAnally will and the Riste Trust, fraudulently and unlawfully drafted the McAnally will and the Riste Trust, and fraudulently sold Viking Village. The nine elements of fraud are: (1) a representation of an existing fact, (2) the fact is material, (3) the fact is false, (4) the defendant knew the fact was false or

was ignorant of its truth, (5) the defendant intended the plaintiff to act on the fact, (6) the plaintiff did not know the fact was false, (7) the plaintiff relied on the truth of the fact, (8) the plaintiff had a right to rely on it, and (9) the plaintiff had damages. *Baddeley v. Seek*, 138 Wn. App. 333, 338-39, 156 P.3d 959 (2007). The plaintiff must show each element by clear, cogent, and convincing evidence. *Id.* at 339.

The trial court did not err in summarily dismissing the Ristes' fraud claims. Among most of the other elements, the Ristes cannot show how they were damaged. The Ristes' argument that the Bank and Stokes Lawrence fraudulently induced the creation of the McAnally will and the Riste Trust is a mere assertion with no details or specifics other than the accusation. The will and trust were litigated and found valid under Washington law; therefore, they were not fraudulently drafted. The PR had the authority to sell Viking Village, the Ristes approved the sale, and the PR and its attorneys did not have a conflict of interest or violate any fiduciary duty by selling Viking Village.

*CPA claims*

The Ristes claim the Bank and Stokes Lawrence violated the CPA by intentionally misstating their qualifications to administer the Estate, falsely advertising their services, and deceptively selling Viking Village. To prevail on a private CPA claim, a plaintiff must establish the following elements: (1) that the defendant engaged in an unfair or

19

deceptive act or practice, (2) occurring in trade or commerce, (3) a public interest impact, (4) injury to plaintiffs in their business or property, and (5) causation. *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 200 Wn. App. 455, 467, 404 P.3d 559 (2017).

The Ristes make the CPA allegations with no details or specifics of what the Bank and Stokes Lawrence did or did not do that was fraudulent or deceptive. Their arguments boil down to the same arguments they asserted in the Probate Matter. Nonetheless, as the commissioner found: "There is no credible evidence in the record that the PR or its agents provided false or misleading information." CP at 672. The only harm the Ristes allege is from the sale of Viking Village. However, as we have found, the PR had nonintervention powers and the authority to sell Viking Village. Furthermore, the PR and its attorneys did not violate a fiduciary duty or have a conflict of interest in selling Viking Village. Therefore, the Ristes cannot show the harm they suffered or causation. The trial court did not err in summarily dismissing these claims.

In summary, the trial court did not err by granting the Bank's and Stokes Lawrence's motions for summary judgment based on collateral estoppel. The Ristes raised identical issues in the Probate Matter, the Ristes were parties to the Probate Matter, the Probate Matter ended in a final judgment on the merits, and application of the doctrine does not work an injustice against the Ristes. The Ristes' claims for negligence, gross

negligence, fraud, and CPA violations were also properly dismissed on summary

judgment as they presented no genuine debate of material fact.[5]

LEGAL MALPRACTICE

The Ristes contend the trial court erred by finding their legal malpractice claim

was barred as a matter of law against Stokes Lawrence because Stokes Lawrence owed no

duty to the Ristes.  We disagree.

To prove a legal malpractice claim, one must show:

> "(1) The existence of an attorney-client relationship which gives rise to
> a duty of care on the part of the attorney to the client; (2) an act or
> omission by the attorney in breach of the duty of care; (3) damage to the
> client; and (4) proximate causation between the attorney's breach of the
> duty and the damage incurred."

*Schmidt v. Coogan*, 181 Wn.2d 661, 665, 335 P.3d 424 (2014) (internal quotation marks

omitted) (quoting *Ang v. Martin*, 154 Wn.2d 477, 482, 114 P.3d 637 (2005)).  At issue

here is the first element—whether Stokes Lawrence owed a duty to the Ristes.  "[A] duty

is not owed from an attorney hired by the personal representative of an estate to the estate

---

[5] Arguably, the Ristes' claims for negligence, gross negligence, fraud, and CPA violations are just new and different causes of action in an attempt to relitigate the same issues that were litigated in the Probate Matter.  These claims likely could be dismissed on collateral estoppel grounds because they are attempts to relitigate the same issues, just through new causes of action.  *See Christensen*, 152 Wn.2d at 306.

or to the estate beneficiaries." *Trask v. Butler*, 123 Wn.2d 835, 845, 872 P.2d 1080 (1994).

In *Trask*, Laurel Slaninka and Russell Trask were the children of George and Johanna Trask. *Id.* at 837. George died and Laurel was appointed PR of his estate and attorney-in-fact for Johanna. *Id.* Laurel retained an attorney, Richard Butler, to assist her. *Id.* Before George died, he conveyed a piece of land to Russell via quitclaim deed. *Id.* Johanna did not sign the deed. *Id.* Laurel attempted to negotiate the return of the conveyed land from Russell to assist paying some of Johanna's health care expenses. *Id.* at 837-38. Russell refused. *Id.* at 838. Laurel initiated a quiet title action on the conveyed piece of land and on Johanna's homestead property on which Russell constructed a garage, greenhouse, and turnaround driveway. *Id.*

Because Johanna's assets were almost depleted, Laurel sold the homestead property on disadvantageous conditions. *Id.* Then, Johanna died. *Id.* Laurel was appointed PR and the estate was to be divided equally between Russell and her. *Id.* Russel petitioned to remove Laurel as PR, and a court found Laurel breached her fiduciary duties by attempting to set aside the land George conveyed to Russell and by selling Johanna's homestead property on disadvantageous conditions. *Id.* Butler continued to represent Laurel. *Id.*

Russell was appointed PR and threatened to sue Laurel. *Id.* at 839. Laurel settled with Russell and Russell then sued Butler, alleging Butler negligently advised Laurel in the quiet title action, by advising the sale of Johanna's homestead property, and by representing Laurel in the PR removal proceedings. *Id.* Russell argued Butler's advice depleted the estate by approximately $90,000. Butler moved for summary judgment, but it was denied. *Id.* On appeal, the Supreme Court reversed.

The court started with the first element of a legal malpractice claim—whether Butler, as attorney for the PR, owed a duty of care to Russell, the estate's beneficiary. *Id.* at 840. The court recognized that two tests, the "multifactor balancing" test and the Illinois "third party beneficiary" test, had been used in Washington to determine whether an attorney owes a duty to a nonclient. *Id.* The court combined the two tests to create a six element determination:

> (1) The extent to which the transaction was intended to benefit the plaintiff;
> (2) The foreseeability of harm to the plaintiff;
> (3) The degree of certainty that the plaintiff suffered injury;
> (4) The closeness of the connection between the defendant's conduct and the injury;
> (5) The policy of preventing future harm; and
> (6) The extent to which the profession would be unduly burdened by a finding of liability.

*Id.* at 843.

23

The first element is a threshold question: its answer does not totally resolve the issue, but an intent is required for further inquiry. *Id.* The court answered the question in the negative, finding that estate beneficiaries are *incidental*, not intended beneficiaries of the attorney-personal representative relationship. *Id.* at 844-45. Moreover, beneficiaries have two preexisting legal procedures to protect their interest: the PR owes beneficiaries a fiduciary duty and beneficiaries can take a proactive role in estate matters by requesting a judicial proceeding under former RCW 11.96.070(2) (1994), *repealed by* LAWS OF 1999, ch. 42, § 637; *see* RCW 11.96A.080(1). Therefore, an attorney hired by a PR is not intended to benefit the beneficiaries of the estate, but the PR. *Id.* at 844-45.

The court also noted that public policy considerations disfavor finding a duty of care from a PR's attorney to estate beneficiaries. *Id.* at 844. Many times, estate matters are not harmonious, especially between a PR and estate beneficiaries. *Id.* To require that a PR's attorney owes a duty of care to both the PR and the beneficiaries will create conflicts of interest. *Id.* The court went on to find, "the unresolvable conflict of interest an estate attorney encounters in deciding whether to represent the personal representative, the estate, or the estate heirs unduly burdens the legal profession." *Id.* at 845.

We are bound by our highest court's holding. The Bank hired Stokes Lawrence to assist the Bank in its PR duties. This transaction was intended to benefit the Bank, not

the Ristes. The benefit to the Ristes was incidental, not intentional. Like in *Trask*, the Ristes still had legal procedures at their disposal—the Bank as PR still owed the Ristes a fiduciary duty, and the Ristes could proactively participate through judicial proceedings if they wished. *See* RCW 11.96A.080(1). As demonstrated in this case, if Stokes Lawrence owed both a duty of care to the Ristes and to the Bank, it would create a conflict of interest and unduly burden them. Frequently, the Bank and the Ristes did not agree on much, including the sale of Viking Village. Because Stokes Lawrence did not owe a duty of care to the Ristes, their claim for legal malpractice fails.

*Negligence and Gross Negligence*

A cause for negligence requires a plaintiff to show (1) duty, (2) breach, (3) causation, and (4) damages. *Keller v. City of Spokane*, 146 Wn.2d 237, 242, 44 P.3d 845 (2002). Gross negligence requires more. Gross negligence is "'negligence substantially and appreciably greater than ordinary negligence,' i.e., 'care substantially or appreciably less than the quantum of care inhering in ordinary negligence.'" *Johnson v. Spokane to Sandpoint, LLC*, 176 Wn. App. 453, 460, 309 P.3d 528 (2013) (quoting *Nist v. Tudor*, 67 Wn.2d 322, 331, 407 P.2d 798 (1965)). "[T]o raise an issue of gross negligence, there must be substantial evidence of serious negligence." *Boyce v. West*, 71 Wn. App. 657, 665, 862 P.2d 592 (1993).

25

The Ristes' actions for negligence and gross negligence against Stokes Lawrence and the Bank fail. First, as discussed above, Stokes Lawrence as attorneys for the Bank did not owe a duty of care to the Ristes. Without a duty of care, the Ristes' claims of negligence and gross negligence fail at the first element.

Although the Bank owed a fiduciary duty to the Ristes, the Bank did not breach any duty to give rise to a negligence or gross negligence claim. The Bank, as PR, had nonintervention powers and the authority to sell Viking Village, and the Ristes approved the sale. The commissioner found the Bank did not violate any fiduciary duty in its administration of the Estate nor make any false or misleading statements. The Ristes fail to show any negligence on the part of the Bank, nonetheless gross negligence. Therefore, the trial court did not err in summarily dismissing the Ristes' claims for negligence and gross negligence.

OPPORTUNITY TO AMEND COMPLAINT

The Ristes assign error that the trial court dismissed their claims with prejudice without allowing them an opportunity to amend their complaint. RAP 10.3(a)(6) requires an appellant's brief to contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." The Ristes assign error to the trial court's failure to allow them to amend their complaint;

however, besides the assignment of error, they make no argument, do not cite to any legal authority, and do not cite to the record to support their alleged error. Because of this, we decline to review it. RAP 10.3(a)(6); *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 348, 308 P.3d 791 (2013).

ATTORNEY FEES

Stokes Lawrence and the Bank seek an award of attorney fees under RAP 18.9(a) for defending an appeal that is frivolous. RAP 18.9(a) permits an appellate court to order a party or counsel who files a frivolous appeal to pay the harmed party compensatory damages, including reasonable attorney fees. Under Washington law, "[a]n appeal is frivolous if, considering the entire record and resolving all doubts in favor of the appellant, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that it is so devoid of merit that there is no possibility of reversal." *Ramirez v. Dimond*, 70 Wn. App. 729, 734, 855 P.2d 338 (1993). All doubts regarding frivolity are resolved in favor of the appellant. *Cramer v. Seattle Sch. Dist. No. 1*, 52 Wn. App. 531, 540, 762 P.2d 356 (1988). Even under this liberal standard, this appeal is so devoid of merit that there was no possibility of reversal. The Ristes have lost on these same or similar issues twice before.

No. 35681-7-III
*Riste v. Estate of Dan McAnally*

Subject to compliance by Stokes Lawrence and the Bank with RAP 18.1(d), we award them their reasonable attorney fees against the Ristes and their attorneys, jointly and severally.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Fearing, J.

28